STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT ZARINSKY, DEFENDANT-APPELLANT.

Argued September 19, 1977—Decided November 17, 1977.

*Mr. Richard F. Plechner* argued the cause for appellant (*Mr. Plechner,* attorney; *Mr. Alan A. Davidson,* on the brief).

*Mr. John T. Mullaney, Jr.,* Assistant County Prosecutor, argued the cause for respondent (*Mr. James M. Coleman, Jr.,* Monmouth County Prosecutor, attorney).

*Ms. Janice Mironov,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey

(Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. David S. Baime and Mr. John DeCicco, Deputies Attorney General, of counsel.)

The opinion of the court was delivered by

PASHMAN, J. Defendant Robert Zarinsky was convicted by a jury of the first degree murder of Rosemary Calandriello. He received the mandatory sentence of life imprisonment. N. J. S. A. 2A:113–4; State v. Funicello, 60 N. J. 60 (1972), cert. den. sub nom. New Jersey v. Presha, 408 U. S. 942, 92 S. Ct. 2849, 33 L. Ed. 2d 766 (1972). Defendant's motion·for a new trial was denied. The Appellate Division affirmed his conviction, rejecting the numerous grounds of appeal advanced by defendant. State v. Zarinsky, 143 N. J. Super. 35 (App. Div. 1976). Our grant of certification was limited to the issue of whether the defendant's prosecution was barred by the statute of limitations. 72 N. J. 459 (1976).

Due to the limited scope of this appeal, it is unnecessary that we recapitulate all of the details of the crime and investigation which are set forth in the opinion below. See 143 N. J. Super. at 41–48. The following facts are relevant to our present inquiry. At approximately 6:00 P.M. on August 25, 1969, seventeen year old Rosemary Calandriello left her home on Center Avenue in Atlantic Highlands, New Jersey, to buy milk and ice pops at two neighborhood stores. She took $2.00 with her and indicated that she would be right back. A neighbor saw her walking down Center Avenue toward the center of town. Another neighbor, Mrs. Vaughn, saw a stocky man slouched in an old, black and white Ford automobile near a bowling alley on Center Avenue. Shortly thereafter, four boys who were schoolmates of Rosemary saw her riding with a stocky man in a Ford Galaxie with a black convertible top. That man was later identified as defendant. Rosemary Calandriello has not been seen or heard from since, and her body has never been recovered. She was promptly reported as missing to the police who immediately started an investigation.

On August 26 the four boys who had seen Rosemary with defendant furnished the police with a description of him and of the vehicle he was driving. The police later learned that two days after Rosemary's disappearance, a man fitting defendant's description had attempted to lure two twelve year old girls into his car in the nearby town of Leonardo. One of the girls had noted the license plate number, CTI 109, of the car from which the offer of a ride had come. Further investigation also revealed that a man fitting defendant's description had attempted to lure two fourteen year old girls into his car two weeks earlier at the same bowling alley on Center Avenue.

A check of the license plate number indicated that the car was registered to defendant's father, with whom defendant and his wife lived in Linden, New Jersey. On August 27, 1969, a "John Doe" complaint was signed charging defendant with contributing to the delinquency of Rosemary Calandriello, a minor. In the late evening of August 27, defendant was arrested at his residence in Linden and the automobile was impounded. The next morning the car was identified by the four boys. Later that day a lineup was held in which the four girls viewed and identified defendant.

The initial complaint against Zarinsky was amended on August 28 to charge him with abduction of Rosemary for an immoral purpose. *N. J. S. A.* 2A:86-3.[1] In June 1970, the complaint charging abduction of Rosemary was dismissed by the trial court on defendant's motion pursuant to *R.* 3:25-3 for unnecessary delay in presenting the charge to a grand

---

[1]The defendant was later indicted with respect to the incidents involving the other four girls. The case against defendant involving the two twelve year olds was dismissed by the trial judge at the close of the State's proofs. He was convicted of crimes involving the fourteen year olds, but the Appellate Division reversed these convictions on the ground that the proofs did not support the charges.

jury. Although no criminal charges were pending after June 1970, the investigation of the defendant continued. On February 20, 1975 Zarinsky was indicted for the murder of Rosemary Calandriello. His conviction was based largely on circumstantial evidence. The only issue we address is whether the indictment, returned some five and a half years after the criminal event, was barred by the statute of limitations.

Prior to *State v. Funicello*, 60 *N. J.* 60 (1972), *cert.* den. *sub nom. New Jersey v. Presha*, 408 *U. S.* 942, 92 *S. Ct.* 2849, 33 *L. Ed.* 2d 766 (1972), the death penalty was mandatory for one convicted by a jury of first degree murder, unless the jury recommended life imprisonment. Our murder statute provides:

> Every person convicted of murder in the first degree, his aiders, abettors, counselors and procurers, shall suffer death unless the jury shall by its verdict, and as a part thereof, upon and after the consideration of all the evidence, recommend life imprisonment, in which case this and no greater punishment shall be imposed.
> [*N. J. S. A.* 2A:113–4, *L.* 1898, *c.* 235 § 108, am. by *L.* 1916, *c.* 270, § 1, *L.* 1919, *c.* 134 § 1.]

As a result of *Funicello, supra,* the present rule in New Jersey is that conviction of murder in the first degree carries the penalty of mandatory life imprisonment. Before that decision, *N. J. S. A.* 2A:113–3 had prohibited a death sentence where a defendant pleaded *non vult* to a murder indictment. However, where a defendant insisted on a trial by jury and was convicted, *N. J. S. A.* 2A:113–4 required the death sentence unless the jury recommended life imprisonment. *Funicello* held that the New Jersey scheme ran afoul of the principles set forth in *United States v. Jackson,* 390 *U. S.* 570, 88 *S. Ct.* 1209, 20 *L. Ed.* 2d 138 (1968), where the death penalty provision in the federal kidnapping statute was declared invalid. It too had provided for a death sentence only upon a conviction by a jury, but differed from the New Jersey scheme in that a death sentence was only imposed upon the recommendation of the jury. Nevertheless, the death penalty provision of the kidnapping statute was

struck down as an unconstitutional burden on the assertion of the accused's Fifth Amendment right not to plead guilty and his Sixth Amendment right to demand a jury trial. But *cf. State v. Corbitt*, 74 *N. J.* 379 (1977). Thus, although the death penalty has not been ruled unconstitutional *per se*, it has effectively ceased to exist in New Jersey. To date, no statute implementing capital punishment in this State has been enacted.

The relevant statute of limitations, *N. J. S. A.* 2A:159–2, *L.* 1898, *c.* 237 § 152, am. by *L.* 1953, *c.* 204 § 1, reads as follows:

Except as otherwise expressly provided by law no person shall be prosecuted, tried or punished for any offense not punishable with death, unless the indictment therefor shall be found within five years from the time of committing the offense or incurring the fine or forfeiture. This section shall not apply to any person fleeing from justice.

Since the only crimes not covered by the statute are characterized as those punishable with death, defendant argues that the non-enforceability of the death penalty in New Jersey renders all crimes subject to the limitations period. It is undisputed that defendant's indictment for murder was not within five years from the time he allegedly committed the offense.

In *State v. Johnson*, 61 *N. J.* 351 (1972), a case heavily relied on by defendant, we held that since murder is no longer a capital offense, our State Constitution requires that an individual charged with murder be eligible for bail. *N. J. Const.* (1947), Art. I, par. 11 provides that all persons are entitled to bail before conviction "except for capital offenses when the proof is evident or presumption great." The term "capital offenses" has generally been defined to refer to those crimes for which the death penalty may be imposed. *State v. Johnson, supra,* 61 *N. J.* at 355; *State v. Konigsberg,* 33 *N. J.* 367, 371 (1960); *State v. Williams,* 30 *N. J.* 105, 125 (1959). Defendant submits that *State*

*v. Johnson, supra,* is analogous to the instant case. He contends that just as the lack of a death penalty mandated bail eligibility for persons accused of murder, so it requires application of the statute of limitations to indictments for that offense. We disagree.

The constitutional provision precluding bail in certain capital cases is not apposite to the rationale for excepting crimes punishable by death from the statute of limitations. As we said in *State v. Johnson, supra*:

> The underlying motive for denying bail in capital cases was to secure the accused's presence at the trial. In a choice between hazarding his life before a jury and forfeiting his or his sureties' property, the framers of the many State Constitutions felt that an accused would probably prefer the latter. But when life was not at stake and consequently the strong flight-urge was not present, the framers obviously regarded the right to bail as imperatively present. *State v. Konigsberg, supra; State v. Williams, supra.* It was considered that pretrial release on non-capital charges was a fundamental right founded in freedom and human dignity, reflected in the everpresent presumption of innocence, and requiring firm articulation in the Constitutions. As the United States Supreme Court said in *Stack v. Boyle*, 342 *U. S.* 1, 4, 72 *S. Ct.* 1, 3, 96 *L. Ed.* 3, 6 (1951), "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. * * * Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."
>
> [61 *N. J.* at 360; footnote omitted.]

This Court has never recognized any fundamental right to avoid criminal prosecution due solely to passage of time. No provision in the United States Constitution or in the Constitution of this State is even remotely suggestive of such a right.

A criminal statute of limitations is designed to protect individuals from charges when the basic facts have become obscured by time. *Toussie v. United States,* 397 *U. S.* 112, 114–115, 90 *S. Ct.* 858, 25 *L. Ed.* 2d 156, 161 (1970); *Sutherland,* 3 *Statutory Construction* § 70.03, p. 301, n. 2 (4th ed. 1974). Balanced against this consideration is the right

of the public to have criminals brought to justice. Our Legislature has determined that the societal interest in punishing the guilty is so strong with respect to certain crimes that the countervailing concern of protecting persons from prosecution for crimes in the distant past is wholly overcome. As to all other offenses, there is an absolute bar to prosecution after a specified period. *See In re Pillo,* 11 *N. J.* 8, 17–18 (1952) ; *Moore v. State,* 43 *N. J. L.* 203, 209 (E. & A. 1881).

Despite the strong interest in preventing persons from being prosecuted at a time far removed from the alleged crime, at great prejudice to their ability to mount an effective defense, the crime of murder has never been subject to a limitations period in New Jersey. The first statute of limitations enacted in this State, *Pat. L.* 1796, p. 208 § 73, specifically excepted the crime of murder from its coverage.[2] So too did the 1879 amendments to that act. *L.* 1879, *c.* 101 § 1 at 183.[3] In 1898 a statute was passed abolishing the statute of limitations for all capital crimes except treason.

---

[2]*Paterson's Laws,* p. 208, § 73 (1796) :

And be it enacted by the authority aforesaid, That no person or persons shall be prosecuted, tried or punished for treason, or other offence punishable with death (murder excepted) unless the indictment for the same shall be found by a grand jury, within three years next after the treason or other offence, punishable with death, shall be done or committed; nor shall any person be prosecuted, tried or punished for any offence not punishable with death, unless the indictment for the same shall be found within two years from the time of committing the offence, or incurring the fine or forfeiture aforesaid : Provided, That nothing herein contained shall extend to any person or persons fleeing from justice.

[3]*L.* 1879, *c.* 101, § 1 :

And be it enacted, That no person or persons shall be prosecuted, tried or punished for treason or other offence punishable with death (murder excepted) unless the indictment for the same shall be found by a grand jury, within three years next after the treason or offence punishable with death, shall be done or committed; nor shall any person be prosecuted tried or punished for any offence not punishable with death, unless the

*L.* 1898, *c.* 237 § 152.[4] The present statute was enacted in 1953. It continued the capital/non-capital distinction, as it excepted all crimes punishable by death from its limitations period. *N. J. S. A.* 2A:159-2.

Only two other jurisdictions which make a capital/non-capital distinction in their statutes of limitations have considered the effect of the invalidity of the death penalty on the limitation of prosecutions. In *United States v. Provenzano,* 423 *F. Supp.* 662 (S. D. N. Y. 1976), aff'd 556 *F.* 2d 562 (2 Cir. 1977), a federal court faced the issue in the context of a kidnapping charge. Prior to 1972 kidnapping was punishable by death. 18 *U. S. C.* § 1201. Under 18 *U. S. C.* §

indictment shall be found within two years from the time of committing the offence, or incurring the fine or forfeiture aforesaid; provided, that any person holding, or having held, or who may hereafter hold any public office or employment, or exercise the functions of such office or employment, either under this state, or any county, city, borough, town or township therein, whether elective or appointive, may be prosecuted, tried and punished for any fraud, malfeasance or other misconduct committed whilst in such office or employment, where the indictment has been or may be found within five years from the time of committing the offence aforesaid; and provided further, that nothing herein contained shall extend to any person or persons fleeing from justice.

[4]*L.* 1898, *c.* 237, § 152:

No person or persons shall be prosecuted, tried or punished for treason unless the indictment for the same shall be found within three years next after the treason shall be done or committed; nor shall any person be prosecuted, tried or punished for any offense not punishable with death, unless the indictment shall be found within two years from the time of committing the offense or incurring the fine or forfeiture; provided, any person holding or having held, or who may hereafter hold any public office or employment, either under this state, or any county, city, borough, town or township therein, whether elective or appointive, may be prosecuted, tried and punished for any forgery or embezzlement committed whilst in such office or employment, where the indictment has been or may be found within five years from the time of committing the offense aforesaid; and provided further, nothing herein contained shall extend to any person fleeing from justice.

3281, "[a]n indictment for any offense punishable by death may be found at any time without limitation." In *United States v. Jackson, supra,* the Supreme Court held the death penalty provision of the kidnapping act unenforceable. Congress responded to that decision in 1972 by repealing the death penalty provision of 18 *U. S. C.* § 1201 and setting the maximum punishment for violation of the statute at life imprisonment.

After examining the legislative history, the Court concluded that

[w]e agree with the government that the term 'capital offense' was used in § 3281 as a shorthand reference to a category of offenses of a particularly serious nature. The ruling in *Jackson* did not alter the nature of the offense. The *Jackson* court concluded that Congress believed kidnapping was so serious a crime that Congress would not want the whole statute to fall just because the death penalty provision could not constitutionally stand (390 *U. S.* at 590–91, 88 *S. Ct.* 1209). Thus the Court held that the penalty provision was severable. We might be inclined, therefore, were *Jackson* the only pertinent event, to hold that it did not transform § 1201 into a non-capital offense for purposes of the applicability of § 3281, and to rule that the prosecution here would be timely.

[*United States v. Provenzano, supra* at 666.]

The Court went on to hold that since the 1972 Congressional amendment had altered the nature of the offense by making it a non-capital crime, the statute of limitations applied to bar the prosecution of the defendants. We note that the New Jersey Legislature has not seen fit to enact any comparable legislation reducing murder to a non-capital offense.

The Supreme Court of Florida has held that there is no statute of limitations for crimes punishable with death which were committed prior to the decision of *Furman v. Georgia,* 408 *U. S.* 238, 92 *S. Ct.* 2726, 33 *L. Ed.* 2d 346, *reh.* den. 409 *U. S.* 902, 93 *S. Ct.* 89, 34 *L. Ed.* 2d 163 (1972), on the ground that the statute of limitations in effect at the time of the crime controls. *State ex rel. Manucy v. Wadsworth,* 293 *S. E.* 2d 345, 347 (Fla. 1974). The effect of

*Furman* was to invalidate Florida's death penalty law. However, under the law in effect at the time of the murder in the *Manucy* case, *Fla. Stat.* § 932.05 Limitations of Prosecutions (1969), capital crimes could be prosecuted at any time subsequent to the alleged offense.

Defendant's crime was committed before our decision in *Funicello, supra.* In line with the rationale of *State ex rel. Manucy v. Wadsworth, supra,* we could hold that since New Jersey had a death penalty at the time of his crime, Zarinsky is subject to the statute of limitations rule as it then existed; the effect of *Funicello* on that rule would thus be irrelevant to his case. However, we decline to so limit our holding. We find persuasive the reasoning of *United States v. Provenzano, supra* at 666, *ante* at 108 that the term capital offense in the federal statute of limitations was used as a "shorthand reference" to a category of particularly serious offenses. Accordingly, we find no merit in defendant's claim that the reference in *N. J. S. A.* 2A:159-2 to offenses punishable by death points toward the death penalty itself rather than to the particularly heinous class of crimes which were formerly subject to capital punishment.

We decline to hold that *State v. Johnson, supra,* necessarily precludes the viability of the class of crimes once punishable by death. Rather, we choose to examine individually each legislative enactment affected by the concept of crimes punishable with death in an effort to discern the intent of the lawmakers. Where a particular provision is inextricably tied to the imposition of the death penalty itself, as was the act refusing bail to persons accused of capital crimes, it will no longer be operative. Conversely, where our view of the legislative design implicates a broader policy goal, the statute will be construed in light of such purpose. The exclusion of crimes punishable with death from the statute of limitations has a strong logical basis when viewed as a policy decision that certain crimes are so heinous as to be always amenable to prosecution. We prefer to con-

strue the statute of limitations in harmony with this obvious intent.

Defendant argues that it is improper to use an unconstitutional statute for any purpose, including a search for legislative intent. The cases indicate otherwise. In *Rutgers Chapter &C v. New Brunswick,* 129 *N. J. L.* 238 (Sup. Ct. 1942), aff'd 130 *N. J. L.* 216 (E. & A. 1943), the court noted that "[a] provision that is unconstitutional, and therefore ineffective as law, is yet to be regarded on the question of the intention of the lawmaker." 129 *N. J. L.* at 242–43, citing *Attorney-General v. Anglesa,* 58 *N. J. L.* 372 (Sup. Ct. 1885). The court went on to refer to the following language from *Davis v. Wallace,* 257 *U. S.* 478, 484–85, 42 *S. Ct.* 164, 166, 66 *L. Ed.* 325, 329 (1921), with which we are in complete accord:

> The reasoning on which the decisions proceed is illustrated in *State ex rel. McNeal v. Dombaugh,* 20 *Ohio St.* 167, 174. In dealing with a contention that a statute containing an unconstitutional proviso should be construed as if the remainder stood alone, the court there said: 'This would be to mutilate the section, and garble its meaning. The legislative intention must not be confounded with their power to carry that intention into effect. To refuse to give force and vitality to a provision of the law is one thing, and to refuse to read it is a very different thing. It is by a mere figure of speech that we say an unconstitutional provision of a statute is stricken out. For all the purposes of construction it is to be regarded as part of the act. The meaning of the legislature must be gathered from all they have said, as well from that which is ineffective for want of power as from that which is authorized by law.'
>
> [*See* 129 *N. J. L.* at 243]

Similarly, in *Washington National Insurance Co. v. Board of Review,* 1 *N. J.* 545, 556–57 (1949), we held that "[i]n the quest for the intention, we cannot ignore the clause which renders the classification invalid." Thus, we reject the contention that the invalidity of the death penalty provision in *N. J. S. A.* 2A:113–4 prevents its consideration by the Court in interpreting the statute of limitations and in ascertaining

the essential purpose of the Legislature in exempting certain types of crimes from the limitation provisions of the statute.

In *State v. Brown,* 22 *N. J.* 405 (1956), this Court held that a conviction of second degree murder, a crime not punishable by death, did not trigger the statute of limitations so as to retroactively bar the indictment. Murder was deemed to be a term denoting a distinct and definite crime which continues to be a capital offense until final disposition of the indictment. 22 *N. J.* at 413. Moreover, while indicating that criminal statutes are strictly read to avoid penalties by construction, we added that the words of an enactment are to be given a rational meaning "in harmony with the obvious intent and purpose of the law." The majority concluded that

> [t]he history of the legislation and other statutes *in pari materia* 'may weigh heavily upon the issue of the meaning to be given a criminal statute'; and the 'common law meanings of words used may always be of importance in determining the exact meaning of what was intended to be conveyed.'
>
> [22 *N. J.* at 415–16;
> citations omitted.]

The history of New Jersey legislative enactments with respect to criminal statutes of limitation is persuasive evidence that no limitation period for murder was intended.

Defendant argues that *Gangemi v. Berry,* 25 *N. J.* 1 (1957), stands for the proposition that statutory construction must be limited to the words of the act absent an ambiguity therein, and requires a literal interpretation of *N. J. S. A.* 2A:159–2. First, we find an ambiguity in the statutory scheme since the death penalty has been voided while the statute remains unchanged. The impact of this apparent anomaly upon the meaning of *N. J. S. A.* 2A:159–2 is not so clear as to obviate our investigation of the legislative intent with respect to a limitations period for murder. Second, we refuse to put on judicial blinders where the intent of the Legislature is manifest. As we stated in *State v. Brown, supra,*

[t]he rule of strict construction will not justify an 'unreasonable' interpretation; interpretation is the process by which the true intention of the law is ascertained and effectuated, and thus means the reasonably probable intention as shown by the symbols of expression, read and evaluated in the light of the context and the other relevant considerations.

[22 *N. J.* at 416.]

The Legislature has always exempted murder from the statute of limitations. This is the consistent theme in the legislative treatment of the subject, and we have perceived no change in that attitude.

Finally, we do not accord much significance to the non-passage of a bill introduced in the Legislature, S.688, 1974, "An Act concerning the removal of a time limitation within which criminal charges must be brought for certain high misdemeanors previously punishable by death and amending *N. J. S. A.* 2A:159-2." The sponsor apparently assumed that *Funicello, supra,* caused the crime of murder to be subject to the statute of limitations. His colleagues, in not enacting the bill, may have disagreed with this premise. As we stated in *Schmoll v. Creecy,* 54 *N. J.* 194, 203 (1969), "legislative inaction can mean only that the legislature did not act." In *Schmoll* we interpreted the wrongful death statute to permit illegitimate children to recover despite the lack of any such provision in its explicit language and with knowledge that several amendments to place such a provision in the act failed to achieve passage. This construction was necessary to save the statute from constitutional infirmity as it otherwise would have denied equal protection guarantees. Here we are faced with a limitations provision indirectly referring to a death penalty statute which has received a limiting construction by this Court so as to pass constitutional muster. We see no reason for ignoring the intent of the Legislature in passing the statute of limitations simply because we were compelled to perform judicial surgery on the death penalty act.

Chief Justice Weintraub made a further observation in *Schmoll,* which is particularly pertinent here, when he

stated that ". . . the question as to the intent of the Legislature that adopted the wrongful death statute is a judicial question as to which neither the action nor inaction of a subsequent Legislature can be dispositive." 54 *N. J.* at 203. We have no doubt as to the intent of the Legislature which passed the statute of limitations. Our decision in the instant case does no more than fulfill the intent of every legislature in the history of our State which has enacted a statute of limitations—by recognizing that the crime of murder has always been regarded as a special offense to which no limitation period applies.

Based on the foregoing reasons, we hold that there is no statute of limitations for murder in New Jersey. Accordingly, the conviction of defendant is affirmed.

*For affirmance*—Chief Justice HUGHES and Justice MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For reversal*—None.