STATE OF CONNECTICUT *v.* ANTHONY GOLINO
(12639)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and COVELLO, Js.

Argued October 2—decision released November 25, 1986

*Charles E. Tiernan III,* with whom were *Michael J. McClary,* certified legal intern, and, on the brief, *Hugh F. Keefe, John J. Keefe, Jr.,* and *Margaret E. Flynn,* legal intern, for the defendant.

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Mary Galvin,* assistant state's attorney, and *Gene Cohen,* legal intern, for the plaintiff (state).

DANNEHY, J. This is a case of murder, commenced by information. Before trial, the defendant moved to dismiss the information on the ground that the prosecution was barred by the statute of limitations. The trial court denied the motion but reserved the case, with the consent of both of the parties, for the advice of this court upon the question set forth in the stipulation for reservation.

The record and stipulated facts show that on July 16, 1973, Concetta "Penny" Serra was killed in New Haven. The defendant, Anthony Golino, was arrested on July 3, 1984, and charged by information with her murder in violation of General Statutes (Rev. to 1972)

§ 53a-54 (a) (1).[1] On July 31, 1984, the defendant filed a motion to dismiss the information, alleging that the prosecution was barred by the pre-1976 statute of limitations, General Statutes (Rev. to 1972) § 54-193.[2] The trial court denied the motion. Because of the importance of the issue, the trial court, on stipulation of the parties, thereafter reserved the following question to this court under Practice Book § 3133 (now § 4147): "Is the prosecution of the defendant, charged with murder in violation of Section 53a-54 (a) (1) (revised to [1972]) barred by Connecticut General Statutes Section 54-193, the Statute of Limitations in effect in 1973?"[3]

[1] "[General Statutes (Rev. to 1972)] Sec. 53a-54. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when: (1) With intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime . . . ."

[2] "[General Statutes (Rev. to 1972)] Sec. 54-193. LIMITATION OF PROSECUTIONS FOR VARIOUS OFFENSES. No person shall be prosecuted for treason against this state, or for any crime or misdemeanor of which the punishment is or may be imprisonment in the Connecticut Correctional Institution, Somers, except within five years next after the offense has been committed; nor shall any person be prosecuted for the violation of any penal law, or for other crime or misdemeanor, except crimes punishable by death* or imprisonment in the Connecticut Correctional Institution, Somers, but within one year next after the offense has been committed; but, if the person, against whom an indictment, information or complaint for any of said offenses is brought, has fled from and resided out of this state, during the period so limited, it may be brought against him at any time, within such period, during which he resides in this state, after the commission of the offense; and, when any suit, indictment, information or complaint for any crime may be brought within any other time than is limited by this section, it shall be brought within such time.

"*Death Penalty declared unconstitutional . . . ."

[3] Although the reserved question refers to the murder statute as "revised to 1973," no statutory revision occurred in that year. The statute will be

To answer this question we must first examine the language of General Statutes (Rev. to 1972) § 54-193, the applicable statute of limitations. That statute prescribed a five year limitation period on prosecutions "for treason . . . or for any crime or misdemeanor of which the punishment is or may be imprisonment in the Connecticut Correctional Institution, Somers . . . ." The second clause of the statute provided a one year period of limitation on prosecutions "for the violation of any penal law, or for other crime or misdemeanor, except crimes punishable by death or imprisonment [at Somers]." Implicit in this statutory scheme is that "crimes punishable by death" were outside of any limitation period and thus always amenable to prosecution. See *State* v. *Ellis*, 197 Conn. 436, 460, 497 A.2d 974 (1985).[4]

The defendant was charged with murder under General Statutes § 53a-54 (a) (1). The punishment for that offense is found in General Statutes § 53a-54 (c): "Murder is punishable as a class A felony unless the death penalty is imposed as provided by section 53a-46." See also General Statutes § 53a-45 (a). Thus, it appears that because § 53a-54 (c) prescribes a possible death sentence, a violation of § 53a-54 (a) (1) is an offense "punishable by death" for purposes of the statute of

referred to, therefore, as "revised to 1972." At oral argument, the court queried whether the parties had standing to present the reserved question to this court, in view of the fact that the trial court had already ruled on the motion to dismiss. It is not our practice to entertain reservations on questions which have already been decided by the trial court. Due to the importance of this matter, however, we will treat the trial court's order reserving the question to us as an implicit revocation of its previous denial of the motion to dismiss.

[4] In *State* v. *Ellis*, 197 Conn. 436, 497 A.2d 974 (1985), we held, inter alia, that a crime punishable either by death or by imprisonment was "punishable by death" for purposes of the statute of limitations and thus prosecution of the defendants, charged with capital felony, was not barred by the statute of limitations.

limitations, and accordingly, prosecution of the defendant in 1984 for the 1973 slaying is not time-barred.

The defendant maintains, however, that in light of the holding of the United States Supreme Court in *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346, reh. denied, 409 U.S. 902, 93 S. Ct. 89, 34 L. Ed. 2d 164 (1972), and this court's decision in *State* v. *Aillon,* 164 Conn. 661, 295 A.2d 676 (1972), the statutory limitation for crimes in "which punishment is or may be imprisonment [at Somers] . . ." controls. The *Furman* court held that the imposition of the death penalty under statutes similar to our own violated the eighth and fourteenth amendments to the United States constitution. *Furman* v. *Georgia,* supra, 239–40. We recognized *Furman* in *State* v. *Aillon,* supra, 662, a case involving bail eligibility in capital cases, ruling that the Connecticut death penalty statutes were unconstitutional. Because the defendant in this case could not constitutionally have been sentenced to death in 1973, he argues that he is not charged with an offense "punishable by death" for purposes of § 54-193. He maintains that this court should apply the five year period of limitation for crimes punishable by imprisonment at Somers. Concededly, this period had already run at the time the information against him was filed.

The unique nature of the defendant's case lies in the fact that the murder of Penny Serra was committed during the hiatus between the *Furman* decision in 1972 and the enactment of an amended statute of limitations four years later. In 1976, the legislature amended § 54-193 to provide expressly that there "shall be no limitation of time within which a person may be prosecuted for a capital felony or a class A felony." Public Acts 1976, No. 76-35; General Statutes (Rev. to

1977) § 54-193.[5] Had the homicide for which the defendant stands charged occurred prior to the *Furman* decision or after April 6, 1976, the effective date of the 1976 amendment, his prosecution clearly would not be subject to the statute of limitations.

Since *Furman* was decided, many courts have been called upon to interpret various statutory provisions, including statutes of limitations, which prescribe the particular procedures to be employed when a defendant is charged with a crime punishable by death. See *United States* v. *Watson,* 496 F.2d 1125 (4th Cir. 1973); *United States* v. *Helmich,* 521 F. Sup. 1246 (M.D. Fla. 1981), aff'd, 704 F.2d 547 (11th Cir. 1983); *United States* v. *Provenzano,* 423 F. Sup. 662 (S.D.N.Y. 1976), aff'd, 556 F.2d 562 (2d Cir. 1977); *Hudson* v. *McAdory,* 268 So. 2d 916 (Miss. 1972); *State* v. *Zarinsky,* 75 N.J. 101, 380 A.2d 685 (1977); see generally annot., 71 A.L.R.3d 453. A significant number of these courts have employed essentially the same flexible reasoning. They have looked behind the particular procedure in question in order to determine "whether the sole reason for it was the defendant's potential exposure to the death penalty, or whether [the legislature] had other rationales relating to the complexity or grave nature of the offenses punishable by death." *United States* v. *Helmich,* supra, 1248; see also *United States* v. *Kennedy,* 618 F.2d 557 (9th Cir. 1980); *United States* v. *Provenzano,* supra, 665; *State* v. *Zarinsky,* supra, 110. If the challenged provision is "inextricably tied to the imposition of the death penalty," upon abolition of the death penalty, that procedural provision would

---

[5] In *State* v. *Paradise,* 189 Conn. 346, 456 A.2d 305 (1983), we addressed the narrow issue of whether this amendment could be applied retroactively. We ruled it could not, because the amendment, by its terms, did not provide for its retroactive application. Id., 353. We did not address the issue presented today of whether the pre-1976 statute of limitations was intended to apply to prosecutions for crimes which, because of the invalidation of the death penalty, could be punishable only by imprisonment.

fall; on the other hand, if the history and purpose underlying the provision evidences a broader policy goal, that provision should be interpreted to effectuate such a goal. *State* v. *Zarinsky,* supra.

A few jurisdictions, however, have not subscribed to this method of analysis. One court has concluded, without reviewing legislative intent, that upon the abolition of the death penalty, "all incidents of capital crimes, substantive as well as procedural, become inapplicable . . . ." *Reino* v. *State,* 352 So. 2d 853, 858 (Fla. 1977); see also *In re Tarr,* 109 Ariz. 264, 508 P.2d 728 (1973); *People* v. *Watkins,* 17 Ill. App. 3d 574, 308 N.E.2d 180 (1974). Applying this rigid rule, the *Reino* court held that a prosecution for a murder committed post-*Furman* but prior to the enactment of a new state death penalty statute should have been commenced within two years of the offense, in keeping with the state statute of limitations governing noncapital crimes. *Reino* v. *State,* supra, 861. The court reasoned that criminal statutes are to be strictly construed in favor of a defendant and that the Florida legislature, upon amending its statute of limitations, could have made the amendment retroactive. Id., 860–61. The defendant in the present case urges us to follow the dictates of *Reino,* pointing out that Connecticut also interprets penal statutes strictly against the state and liberally in favor of an accused. See *State* v. *Tedesco,* 175 Conn. 279, 291, 397 A.2d 1352 (1978); *State* v. *Anonymous,* 33 Conn. Sup. 34, 39, 358 A.2d 691 (1976).

Although we acknowledge the fundamental principle that criminal statutes are to be strictly construed, "it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent. *State* v. *Belton,* 190 Conn. 496, 505–506, 461 A.2d 973 (1983); *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983); *State* v. *Sober,* 166 Conn. 81, 91, 347 A.2d 61 (1974)." *State*

v. *Ellis,* supra, 445. We conclude that the reasoning applied by the *Helmich, Zarinsky* and *Provenzano* courts, wherein a statute's underlying purpose is examined in determining its viability after *Furman,* more closely comports with this court's disinclination to "interpret statutes in a vacuum." See *State* v. *Ellis,* supra. Where a court possesses clues to the meaning of a statute, "there certainly can be no 'rule of law' which forbids [their] use, however clear the words may appear on 'superficial examination.' "*Train* v. *Colorado Public Interest Research Group,* 426 U.S. 1, 10, 96 S. Ct. 1938, 48 L. Ed. 2d 434 (1976), quoting *United States* v. *American Trucking Assns.,* 310 U.S. 534, 543–44, 60 S. Ct. 1059, 84 L. Ed. 1345 (1940). "A statute such as [General Statutes 54-193], enacted more than one hundred sixty years ago, cannot meaningfully be interpreted 'in isolation but must be read in light of the common notions of the day and the assumptions of those who drafted [it].' *Oliphant* v. *Suquamish Indian Tribe,* 435 U.S. 191, 206, 98 S. Ct. 1011, 55 L. Ed. 2d 209 (1978)." *State* v. *Ellis,* supra.

Further support for employing the legislative intent rationale can be found in our severability statute, General Statutes § 1-3. That statute provides that "[i]f any provision of any act passed by the general assembly or its application to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of such act." In *State* v. *Menillo,* 171 Conn. 141, 145, 368 A.2d 136 (1976), we interpreted § 1-3 to mean that other provisions of a defective statute would fall only if they were so dependent on the defective portions that they could not stand on their own. Since § 1-3 by its terms deals with other *applications* as well as other *provisions* of an invalid act, the *Menillo* reasoning can be analogized to the case at bar, where the effect of one statute's invalidity on another related statute is at issue.

*State* v. *Menillo* suggests, as does *State* v. *Zarinsky*, supra, that we must determine whether the statute of limitations in effect in 1973 was so inextricably tied to the imposition of the death penalty itself, that upon invalidation of the death penalty, there no longer existed crimes "punishable by death" for purposes of the statute of limitations. Specifically, we must inquire whether, by using the phrase "punishable by death" in § 54-193, the legislature intended to exempt from the statute crimes which *actually* could be punished by death, the exemption being because of the severity of the punishment imposed, or whether it intended to exempt a specific *category* of crimes, which, because of their heinous nature, should always be amenable to prosecution.

We look to *State* v. *Ellis*, supra, for guidance. In *Ellis*, we set forth a detailed history of General Statutes § 54-193,[6] explaining that the statute has its roots in an act of 1821. See General Statutes (1821 Rev.) tit. 59, § 11.[7] We concluded in *Ellis* that the 1821 statute created four categories of crimes for purposes of the statute of limitations: First, crimes where the punishment "*is* . . . imprisonment at new-gate prison . . ." (emphasis added) were subject to a three year limita-

---

[6] "[General Statutes (1821 Rev.) tit. 59] Sect. 11. No person shall be indicted, informed against, complained of, or in any way prosecuted, before any court, for treason against this state, or for any crime or misdemeanor, whereof the punishment is, or may be, imprisonment in new-gate prison, unless the indictment, presentment, or complaint be made and exhibited within three years, next after the offence shall have been committed: nor shall any person be indicted, informed against, complained of, or in any way prosecuted, before any court, for the breach of any penal law, or for other crime or misdemeanor, excepting crimes punishable by death, or imprisonment in new-gate prison, unless the indictment, presentment, information or complaint, be made and exhibited within one year next after the offence shall have been committed. . . ."

[7] The statute of limitations referred to in *State* v. *Ellis*, 197 Conn. 436, 497 A.2d 974 (1985), General Statutes (Rev. to 1975) § 54-193, is identical to the statute in this case (Rev. to 1972) § 54-193.

tion period; second, crimes where the punishment *"may be,* imprisonment in new-gate prison"[8] (emphasis added) were likewise subject to the same three year period; third, all "other crime[s] or misdemeanor[s], excepting crimes punishable by death, or imprisonment at new-gate prison" were governed by a one year limitation period; and, finally, crimes "punishable by death" were outside of the limitation statute. *State* v. *Ellis,* supra, 446–49, quoting various portions of General Statutes (1821 Rev.) tit. 59, § 11. Commenting on a similar classification scheme which existed prior to 1821, the renowned Zephaniah Swift explained that in creating the scheme, "[t]he legislature have aimed to proportion the punishment, to the nature of the offence, and for that purpose have introduced three distinct grades of punishment—*Death; Confinement to hard labor, and coarse fare; Corporal and pecuniary pains and penalties.* The crimes for which death is the punishment, are treason, murder, rape, the crime against nature, mayhem, and arson, where some life is endangered. Imprisonment in New-Gate is inflicted on robbery, burglary, forgery, counterfeiting, horsestealing, arson, attempting to commit a rape, perjury, and aiding to escape from New-Gate prison. On all other crimes corporal and pecuniary punishments are inflicted." (Emphasis in original.) 2 Swift, A System of the Laws of the State of Connecticut (1796) p. 296; see *State* v. *Ellis,* supra, 448. Based on this history, we concluded in *Ellis* that our statute of limitations "as a whole, represents a system, a classification scheme whereby the allowable period of prosecution *is related to the gravity of the offense."* (Emphasis added.) *State* v. *Ellis,* supra, 450. We reaffirm that conclusion.

---

[8] In *State* v. *Ellis,* 197 Conn. 436, 449, 497 A.2d 974 (1985), we explained that this category referred to only one crime, manslaughter, because only with respect to that crime was the sentencing court given discretion in determining where the sentence would be served.

Although the 1821 statute of limitations was revised several times between then and 1973,[9] these revisions did not alter the basic classification scheme in which the gravest offenses, including murder (or first degree murder when Connecticut subscribed to degrees), were placed outside of any period of limitations. When General Statutes § 54-193 was amended in 1976 to provide that capital and class A felonies would always be amenable to prosecution; see Public Acts 1976, No. 76-35; the sponsor of the amendment explained that it was intended to *clarify* the existing law. 19 S. Proc., Pt. 1, 1976 Sess., p. 341, remarks of Senator David H. Neiditz. Statements of legislators often provide strong indication of legislative intent. See *Hartford Electric Light Co.* v. *Wethersfield,* 165 Conn. 211, 224, 332 A.2d 83 (1973). We view the sponsor's remarks as a clear indication that the pre-1976 statute of limitations was not intended to bar a prosecution for murder, the crime with which the defendant is charged, even though in 1973 the defendant could not have been sentenced to death. See *United States* v. *Helmich,* supra; *State* v. *Zarinsky,* supra.

In *Ellis,* we also explained that the policy underlying a criminal statute of limitations represents a balance between the public demand for justice and the right of a person to be free from the continual threat of prosecution for past misdeeds. Moreover, the passage of time may either obscure the recollection of facts necessary to convict, or hinder the presentation of a proper defense. Our legislature has weighed and measured these competing interests through the enactment

---

[9] For example, in 1827 the term "new-gate" was replaced by the phrase "Connecticut State Prison" throughout the statute. Public Acts 1827, c. 27, § 9, p. 166. In 1850, a tolling provision was added for accuseds who had fled the jurisdiction. Public Acts 1850, c. 56, p. 40. In 1882, the three year period for "state prison" offenses was extended to five years. Public Acts 1882, c. 15, p. 126. In 1969, "state prison" was changed to "the Connecticut Correctional Institution at Somers." Public Acts 1969, No. 297.

of General Statutes § 54-193. *State* v. *Ellis,* supra, 458–59 n.18; see *Toussie* v. *United States,* 397 U.S. 112, 114–15, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970). Yet in this statute, for purposes of limiting a prosecution, we perceive no distinction between crimes other than that which stems from their relative difference in seriousness. As we stated in *State* v. *Ellis,* supra, 458 n.18, the difficulty of gathering evidence of a past robbery is not inherently greater than in gathering evidence of a more serious crime such as murder. The fact that particular procedures for implementing the death penalty were held unconstitutional in *Furman* v. *Georgia,* supra, and *State* v. *Aillon,* supra, does not diminish the serious nature of an offense which, prior to those decisions, was punishable by death. We conclude that the legislature used the phrase "punishable by death" as a shorthand reference to a category of crimes which, because of their atrocious nature, would always be amenable to prosecution. *United States* v. *Provenzano,* supra, 666; *Butler* v. *United States,* 481 A.2d 431, 447 (D.C. App. 1984).

Our holding in *State* v. *Aillon,* supra, in no way counsels a different result. There, we held that a defendant charged with a capital crime was entitled to bail because, in light of *Furman,* he was no longer being charged with a crime punishable by death for purposes of the constitutional and statutory bail provisions. *State* v. *Aillon,* supra, 662. The rationale for denying bail in certain capital cases, however, is not necessarily apposite to the reasons for removing crimes punishable by death from the statute of limitations. The purpose of bail is to ensure the accused's presence at trial. *State* v. *Menillo,* 159 Conn. 264, 269, 268 A.2d 667 (1970). The New Jersey Supreme Court has explained that "[i]n a choice between hazarding his life before a jury and forfeiting his or his sureties' property, the framers of many State Constitutions felt that an accused would

probably prefer the latter. But when life was not at stake and consequently the strong flight-urge was not present, the framers obviously regarded the right to bail as imperatively present." *State* v. *Johnson,* 61 N.J. 351, 360, 294 A.2d 245 (1972); see *State* v. *Zarinsky,* supra. The constitutional and statutory provisions refusing bail to certain persons accused of capital crimes, therefore, appear to be closely tied with the imposition of the death penalty itself. Upon the latter's invalidation, it was logical for this court to conclude that the former would also be inoperative.

In reaching our decision today, we also find it significant that the invalidation of the death penalty occurred through judicial fiat; yet no correlative legislative action took place to eliminate the penalty from our statute books. In *United States* v. *Provenzano,* supra, the court, by way of contrast, was faced with a situation where, subsequent to *Furman,* Congress had amended the relevant kidnapping statute to remove the death penalty from the statute's punishment provision. While agreeing with the government that the term "capital offenses" in the federal statute of limitations was used as a shorthand reference to a category of particularly serious crimes, the *Provenzano* court nonetheless concluded that in view of the Congressional action, a violation of the kidnapping statute could no longer be considered an offense "punishable by death." *United States* v. *Provenzano,* supra, 666–67.

Our legislature, however, took no action to remove from our statutes the imposition of the death penalty for murder. Furthermore, the absence of a statute of limitations for crimes punishable by death is directly related to the gravity of the offense rather than the severity of the penalty. Accordingly, the offense for which the defendant is charged is still "punishable by death" for purposes of General Statutes (Rev. to 1972)

§ 54-193. The answer to the reserved question, "[I]s the prosecution of the defendant, charged with murder in violation of Section 53a-54 (a) (1) (revised to [1972]), barred by Connecticut General Statutes Section 54-193, the statute of limitations in effect in 1973?" is no.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.