596 A.2d 779
THE STATE OF NEW JERSEY, PLAINTIFF, v.
JEFFERSON FULLARD, DEFENDANT.

Superior Court of New Jersey
Law Division

June 21, 1991.

*William Purdy* for plaintiff (*Ronald S. Fava,* Prosecutor of Passaic County, attorney).

*William J. Rohr,* for defendant.

REISS, J.S.C.

The Paterson Municipal Court complaint which is the subject of this motion to dismiss with prejudice arose out of an investigation by the Paterson Police Department and the Passaic County Prosecutor's Office into allegations that defendant, Jefferson Fullard, murdered John Wesley Brown on or about December 23, 1989. The Paterson Police, after obtaining sworn statements from witnesses, issued the complaint on January 5, 1990, charging defendant with murder as well as possession of a weapon and tampering with evidence.

While the parties are in agreement as to the propriety of dismissing the complaint against defendant, the gravamen of defendant's motion focuses upon dismissing the complaint with prejudice, thus barring the State from ever re-presenting its case against defendant. Specifically, defendant argues that the principle of fundamental fairness which underlies the double

jeopardy clauses of the state and federal constitutions mandates a permanent termination of the prosecution. By contrast the State argues that if defendant were granted the relief he is seeking the result would effectively amount to an unwarranted judgment of acquittal before defendant was made to stand trial. The State further contends that defendant has brought this motion prematurely in the sense that the interests of justice would be better served were the court to determine whether a re-prosecution infringes upon any of defendant's protected rights at the time the prosecution is rendered. In this way, the court would be able to evaluate the totality of the existing circumstances in making its determination rather than merely barring the possibility of any further prosecution based solely upon abstract principles.

The ultimate issue of first impression raised in the instant case is, therefore, whether the fact that defendant was charged with, *inter alia*, murder, arrested and incarcerated but never tried for these charges, constituted such an egregious infringement upon defendant's rights when viewed in the context of fundamental fairness, so as to warrant permanent relief from the prosecution of the charges. While our case law has peripherally discussed various instances where charges have been dismissed based upon fundamental fairness principles, *State v. Yoskowitz*, 116 *N.J.* 679, 563 *A.2d* 1 (1989); *State v. Abbati*, 99 *N.J.* 418, 493 *A.2d* 513 (1985); *State v. Tropea*, 78 *N.J.* 309, 394 *A.2d* 355 (1978); *State v. Currie*, 41 *N.J.* 531, 197 *A.2d* 678 (1964); *State v. Gregory*, 66 *N.J.* 510, 333 *A.2d* 257 (1975); *State v. Tsoi*, 217 *N.J.Super.* 290, 525 *A.2d* 1116 (App.Div.1987), the issue presented has not been specifically addressed.

The facts giving rise to this matter as set forth in the State's brief are as follows: On or about December 23, 1989, the Paterson Police Department commenced an investigation into the death of John Wesley Brown, who had reportedly been struck by an automobile. An autopsy examination upon the victim's body indicated that an automobile was not the cause of

death, but rather the victim died as a result of a stab wound he suffered to the chest which punctured his lung.

Bernice Martin, a 36–year old female who resides with defendant gave a sworn statement to the Paterson Police. In her statement, Martin revealed that defendant and the victim were drinking together in the Lucky 12 Tavern located in Paterson, New Jersey. At one point the two men left the establishment and, after a brief absence, defendant returned to the tavern alone.

When the tavern closed, Martin along with defendant and a codefendant left the establishment together. They arrived at their automobile, whereupon Martin observed a man, later identified as the victim, seated in the vehicle who appeared to be asleep or unconscious. Martin told the police that the automobile stopped in an area within a block of where the victim's body was eventually discovered. Defendant exited the automobile, opened the rear door and removed the victim.

The police also received sworn statements from Pamela Tann, the 20–year old daughter of Bernice Martin, and Angela Martin, a 17–year old female, both of whom reside with Bernice Martin. In their statements the girls indicated that on the night in question defendant and Bernice Martin arrived home at approximately 3:00 a.m. Each girl also intimated that she was aware defendant inveterately has a knife in his possession.

Based upon the above sworn statements the Paterson Police, on January 5, 1990, issued a complaint charging defendant with the murder of John Wesley Brown, possession of a weapon and tampering with evidence. Subsequently, on January 18, 1990, a probable cause hearing was conducted at which it was found that probable cause existed for the tampering with evidence charge, but not for the murder charge. Moreover, despite further investigation by the Passaic County Prosecutor's Office, the State concedes that it has not discovered the quantum of evidence sufficient to establish these charges beyond a reasonable doubt.

Defendant, via his attorney filed on April 29, 1991, the motion to dismiss with prejudice now under consideration. It is defendant's position that because the State's conduct caused defendant to suffer an extended period of oppression, anxiety and insecurity, the principle of fundamental fairness mandates that the complaint be dismissed with prejudice.

The Constitution of New Jersey, provides generally that "no person shall, after acquittal, be tried for the same offense...." *N.J. Const.* (1947) Art. I, par. 11.[1] The double-jeopardy clause has been adjudged to provide a defendant with the following three protections: "(1) against a second prosecution for the same offense after an acquittal; (2) against a second prosecution for the same offense after conviction; and (3) against multiple punishments for the same offense." *State v. Yoskowitz*, 116 *N.J.* 679, 689, 563 *A.*2d 1 (1989).

█ The double-jeopardy clause is only invoked after defendant has been placed in jeopardy. Jeopardy against a defendant attaches precisely when the jury has been impanelled and sworn at a jury trial or when the first witness is called and sworn at a bench trial. *State v. Lynch*, 79 *N.J.* 327, 341, 399 *A.*2d 629 (1979).

In New Jersey the "elusive concept" of fundamental fairness has been utilized to afford defendants protections in cases where the rights implicated do not squarely fall within the scope of an identifiable constitutional protection. *State v. Yoskowitz, supra.* In this way a defendant may be protected from a second prosecution even if never placed in jeopardy. This doctrine of fundamental fairness is derived from the

---

[1]The double-jeopardy clause of the New Jersey Constitution, *N.J. Const.* (1947) Art. I, par. 11, has been interpreted as carrying the identical meaning and breadth of application as the double-jeopardy clause of the United States Constitution, applicable to the States through the Fourteenth Amendment, *U.S. Const.*, Amend. V; *State v. Tropea*, 78 *N.J.* 309, 313, n. 2, 394 *A.*2d 355 (1978); *State v. Kleinwaks*, 68 *N.J.* 328, 334, n. 4, 345 *A.*2d 793 (1975).

underlying policy considerations of the double-jeopardy clause. 116 *N.J.* at 705, 563 *A.*2d 1.

In the seminal fundamental fairness case involving double-jeopardy protection, *State v. Currie*, 41 *N.J.* 531, 197 *A.*2d 678 (1964), the New Jersey Supreme Court stated that a court's "primary considerations should be fairness and fulfillment of reasonable expectations in the light of constitutional and common law goals." *Id.* at 539, 197 *A.*2d 678. Relevant factors that help fashion the double-jeopardy doctrines "include the speed with which such violations are generally tried, the extent of the evidential presentation and of the legal representations, and the maximum terms and fines allowable and anticipated by the defendant." *State v. Yoskowitz, supra,* 116 *N.J.* at 706, 563 *A.*2d 1.

A court in reviewing a fundamental fairness claim must therefore consider a defendant's reasonable expections based upon the nature and extent of the proceedings against him. *Ibid.* The logical extension of this concept is that a second prosecution is far more likely to infringe upon a defendant's rights to fundamental fairness when: 1) the State initially had an opportunity to present a substantial amount of evidence against defendant and defendant did not have adequate representation; 2) defendant has been subjected to the prosecution for a far greater time than usually required for the charges to be tried; and 3) defendant's reasonable anticipation as to the punishment he is exposed to is not commensurate with the State's action in re-prosecuting him.

Moreover, in determining whether a re-prosecution triggers historical double-jeopardy concerns, it is important to bear in mind that the doctrine of fundamental fairness is to be sparingly applied. "It is appropriately applied in those *rare cases* where not to do so will subject the defendant to oppression, harassment or egregious deprivation." *Id.* at 712, 563 *A.*2d 1, emphasis supplied (Garibaldi, J., concurring in part and dissenting in part).

■ Because the instant motion attempts to permanently prohibit the State from re-prosecuting defendant, the court must also consider the serious nature of the crime charged and the State's valid interest in protecting society.

Defendant in the present case was charged with murder in violation of *N.J.S.* 2C:11–3. *N.J.S.A.* 2C:1–6a clearly states that a prosecution for such an offense "may be commenced at any time."

The New Jersey Supreme Court observed in *State v. Zarinsky*, 75 *N.J.* 101, 380 *A.*2d 685 (1977), that "despite the strong interest in preventing persons from being prosecuted at a time far removed from the alleged crime at great prejudice to their ability to mount an effective defense, the crime of murder has *never* been subject to a limitations period in New Jersey." *Id.* at 107, 380 *A.*2d 685; emphasis supplied. Murder has been treated in this way because of the special regard with which its been held by every sitting Legislature in our State's history. *Id.* at 114, 380 *A.*2d 685.

Specifically, in considering the public interest in having the perpetrators of certain crimes brought to justice, murder has been deemed such an evil and invidious offense so as to entirely overcome the countervailing concern of protecting defendants from the prosecution of murders committed in the distant past. *Id.* at 107, 380 *A.*2d 685.

■ Applying this historical treatment of murder prosecutions to the situation where the charges are to be dismissed pretrial, the court would be logically-impelled to dismiss the charges without prejudice. In this way, the court would allow the State to protect the public interest while remaining mindful of a defendant's rights. Furthermore, dismissing the charges without prejudice would not be unduly prejudicial to a defendant, for as stated by the New Jersey Supreme Court in *State v. Gaffey*, 92 *N.J.* 374, 456 *A.*2d 511 (1983):

In fitting circumstances, such a defendant would doubtless, as a matter of elemental fairness and due process, be protected from any attempt to renew the

prosecution against him, notwithstanding an earlier dismissal of the indictment without prejudice. [at 388, 456 *A*.2d 511].

Thus, in situations where criminal charges are to be dismissed, they are properly dismissed without prejudice while defendant retains all of his constitutional and *quasi*-constitutional rights to attack the propriety of new charges for the same offense if any are forthcoming.

■ Moreover, viewing this case from the context of fundamental fairness, it is clear that defendant has not presently been subjected to the quantum of oppression, harassment or egregious deprivation necessary to warrant a dismissal of the charges against him with prejudice.

Defendant was charged with murder on January 5, 1990. Less than two weeks later, on January 18, 1990, a finding was made that no probable cause existed to sustain that charge.[2] Further, defendant was at all times fully and adequately represented by the public defender's office. To bar the State from ever re-prosecuting defendant for this murder based solely upon the limited amount of evidence that was presented at the probable cause hearing less than two weeks after the charges were lodged would be grossly unfair to the State. This is especially true in light of the special treatment that the prosecution of murder is given in New Jersey.

■ Defendant's argument that the State has placed him in a state of anxiety and insecurity for a period of one and a half years is somewhat misleading. Defendant could have brought a motion to dismiss the complaint against him, particularly the count relating to murder, at any time after the probable cause hearing on January 18, 1990. The reason for any anxiety defendant may have felt about the resolution of the murder charge is directly attributable to the dilatory fashion in which

---

[2]Probable cause was found to exist for the charge of tampering with evidence. The court imposed a $15,000 bail without the ten percent option. This amount was presumably based upon defendant's prior criminal record, including a 1978 conviction for homicide.

he brought this motion. Therefore, defendant can have no reasonable expectation that the State would now be permanently prohibited from re-prosecuting him on this charge.

Furthermore, by denying defendant's present motion the court in no way prohibits defendant from reasserting his rights to fundamental fairness in the event that the State brings these charges anew. The court at that time may more precisely assess the nature and degree of any harm defendant has suffered based upon the specific circumstances underlying the State's action in renewing its prosecution. By taking this approach, both society's interest in prosecuting murder cases and defendant's interest in protecting his rights are maintained.

The court, therefore, finds that in this case the doctrine of fundamental fairness does not vitiate the State's right under proper circumstances to re-prosecute defendant for murder at some later time.

Accordingly, defendant's motion is hereby denied and the Paterson Municipal Court complaint is dismissed without prejudice.