748 A.2d 604 (2000)
329 N.J. Super. 499
STATE of New Jersey, Plaintiff-Appellant,
v.
Paul MOYA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 1999.
Decided April 6, 2000.
*606 Fred J. Theemling, Jr., Hudson County Prosecutor, for plaintiff-appellant (Susan B. Gyss, Assistant Prosecutor, on the brief).
Ivelisse Torres, Public Defender, for defendant-respondent (Bernadette DeCastro, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges PRESSLER, LANDAU and ARNOLD.
*605 The opinion of the Court was delivered by LANDAU, J.A.D.
The State of New Jersey appeals a Law Division order entered February 18, 1999 that dismissed with prejudice Hudson County Indictment No. 963-06-95 charging defendant Paul Moya with counts of attempted aggravated sexual assault, attempted sexual assault, aggravated criminal sexual contact, and robbery, all arising out of an incident on September 29,1994, together with counts of attempted sexual assault and criminal sexual contact alleged to have occurred in a separate incident involving another victim on October 6, 1994.
The charges were dismissed with prejudice pursuant to N.J.S.A. 2C:4-4, -5, -6 because the judge concluded that defendant would not ever be competent to stand trial.[1] The judge also found that defendant presented no danger, and that the passage of time since the indictments prejudiced his right to a fair trial.
Apart from contesting defendant's incompetency to stand trial, the State had requested that, in light of the gravity of the untried charges, some form of monitorship be continued for a period not specified before dismissing the charges with prejudice. While it was not formally spelled out by the assistant prosecutor, it is apparent that the State was essentially asking that there be further exploration of the issue of defendant's danger to self or society, and the possible need either for commitment or a lesser form of supervision under N.J.S.A. 2C:4-6b, before dismissing all charges with prejudice.
It is conceded that the judge conducted a competency hearing as required by N.J.S.A. 2C:4-6 and State v. Spivey, 65 N.J. 21, 319 A.2d 461 (1974). The State argues on appeal, however, that unduly high standards were applied in determining whether it had met the burden to establish defendant's competence by a preponderance of the evidence. The State contends that the record showed defendant "understood the role of the judge, his attorney and to a large degree, the prosecutor"; that "[h]e was able to discuss the serious charges against him" and offered an explanation, constituting a defense, to the charges in each of the criminal incidents; that he understood his right to testify or not to testify on his own behalf and expressed a reason (his epilepsy and the risk of seizure) for not doing so; that he personally questioned the voluntariness of incriminating statements given to the police respecting the incidents; and that he even expressed moral outrage at anyone who would commit such crimes. Relying on evidential support for these assertions, the State says that it met its statutory burden under N.J.S.A. 2C:4-4 to establish competence. To the extent the defendant did not articulate with more *607 precision his understanding of a trial and the functions of the defense counsel, prosecutor, judge and jury, the State argues that the level of understanding he displayed in response to the judge's questions primarily reflected that of an unsophisticated and poorly educated layman who has had no prior contact with the criminal justice system.
Our review of the record compels us to reverse and remand. We believe that defendant's answers to the judge's questions reflected a considerable degree of comprehension, as did the responses recorded by Dr. Simring, the only expert who specifically detailed his questions to defendant and defendant's responses. These responses were at least sufficient to warrant an effort by the judge to instruct the defendant about the meaning of the factors set forth in N.J.S.A. 2C:4-4b(2)[2] before concluding that he was permanently incapable of comprehending them. Moreover, our review of the record convinces us that there was insufficient evidence in the record to support the judge's conclusion that defendant posed no danger to society or to himself, absent any factual exploration into whether, competent or not, the defendant (who has reportedly confessed) did in fact attempt the two sexual assaults and commit a robbery as charged in the indictment. Finally, on the issue of prejudicial delay in bringing defendant to trial, the record is also insufficient to determine whether there were reasons to explain and excuse as non-prejudicial and within constitutional standards the four and one-half year hiatus between the alleged crimes and the incompetency determination.

The Competency Issue
The judge questioned defendant directly as well as hearing testimony from two of the three expert witnesses who tested and examined the defendant. He also had the benefit of reports from the three experts. Two, including a court-appointed psychiatrist, found defendant to be competent to stand trial. All experts concurred that defendant was mildly retarded and functionally illiterate, although having received special schooling for the educable mentally retarded.[3] Essentially rejecting the testimony and reports of the two experts who found defendant competent to stand trial, the judge relied "most importantly [upon] the testimony of Mr. Moya himself when he was questioned by me" and concluded that "he's not capable of fully understanding the process that he's confronting as set out in 2C:4-4."
We recognize that it is the judge and not the experts who must make the ultimate determinations as to competency and as to the likelihood of danger to self or society. See, e.g., In re D.C., 146 N.J. 31, 59, 679 A.2d 634 (1996). Our review of such determinations is typically, and properly, highly deferential. However, particularly *608 where crimes of violence are charged, those judicial determinations should be informed by a comprehensive factual record that provides a basis for the N.J.S.A. 2C:4-4 determination and for a N.J.S.A. 2C:4-6 conclusion that a defendant may be safely and unconditionally released.
Unfortunately, while appellate courts have noted that N.J.S.A. 2C:4-4 has replaced the generalizations of prior case law with more precise and detailed standards for determining a defendant's competency, State v. Coruzzi, 189 N.J.Super. 273, 323, 460 A.2d 120 (App.Div.) certif. den. 94 N.J. 531, 468 A.2d 185 (1983); State v. Khan, 175 N.J.Super. 72, 82-83, 417 A.2d 585 (App.Div.1980), we have given relatively little guidance to trial judges as to appropriate methodology for arriving at reliable conclusions as to whether an intellectually challenged defendant meets the standards.
By contrast, in cases treating a competent defendant's waiver of counsel, the Supreme Court has set forth in considerable detail the information and explanations which should first be conveyed to a defendant to ensure an understanding of the implications and possible consequences of appearing pro se, before questioning the defendant about that understanding. See State v. Crisafi, 128 N.J. 499, 510-12, 608 A.2d 317 (1992) and authorities there cited.
We do not assume that prospective jurors are familiar with the roles and functions of all participants in the trial process nor with the functioning of a criminal court. In most New Jersey courthouses today, prospective jurors are shown a videotape that provides and illustrates the kind of trial related information that defendant lacked when responding to questions by the judge and to the information-based questions of the "Competency Assessment to Stand Trial" inventory administered by Dr. Fulford, defendant's expert. As Dr. Fulford testified, this inventory measures only what mentally retarded persons:
know about terms, concepts ... It's kind of like a screening of how much does he know. You go through the basic concepts with him, what does he know, what doesn't he know, what are some areas where he recognizes it, but confuses it, and then I relate that to intelligence.
Now there are significant areas that he didn't know. For example, in my report from the section beginning on the competency assessment paragraph, he didn't know what a witness was. He said that he thought a judge was someone who talked to you to see if you're telling the truth and nothing but the truth. He didn't know what a jury was. Confused the name of his attorney thinking it was a man with a different name. He did not know what a prosecutor was, and he stated that a hearing isa hearing was when you hear something. So those are the kind of distortions, or misinformation, or lack of information that he showed, and I interpreted that in the light of his overall intelligence.
More should not be expected of a concededly mildly retarded defendant than we expect of jurors unless the individual has demonstrated, following simple instruction no less comprehensive than those given to prospective jurors, an inability to process or comprehend enough of the information to meet N.J.S.A. 2C:4-4b(2) standards.
Here, the initial assertion of incompetency arose from the borderline intelligence deficit of a defendant who works, functions in society, and apparently lives in a relationship with a competent woman whom he intends to marry. Two experienced examining forensic psychiatrists considered him competent to stand trial. He gave incriminating statements admitting to the attempted sexual assaults, which he later disputed during a psychiatric examination. In his three hour interview with Dr. Simring, the State's expert, defendant asserted the relatively sophisticated *609 explanation that incriminating statements [4] he gave to police were coerced in violation of his rights and that he intended to sue.
Defendant provided a lucid and factually explicit description of one sexual encounter to Dr. Simring. As to that incident, he explained, in effect, that while at a bar where he had been drinking and playing pool, he was picked up by a woman much older than he, who invited him home, ostensibly so that he could evaluate the extent of certain necessary repairs. (Defendant often assisted his uncle in electrical and other repair work.) According to defendant's explanation, she unzipped his fly and manipulated his genitals. When he terminated the encounter, she cried "rape", another "fat" woman appeared, the two beat him and he fled. He denied completely any involvement in the second, unrelated attempted sexual assault charge, contending that his statement to police was improperly coerced respecting this incident as well.
As the judge observed, his conclusion that defendant was not competent to stand trial was based upon his assessment of defendant's responses to his questions. The judge made these findings in the competency hearing concluded on November 10, 1998:
I'm satisfied, based on all the reports and all the testimony, and most importantly the testimony of Mr. Moya himself when he was questioned by me, that he's not capable of fully understanding the process that he's confronting as set out in 2C:4-4. Specifically, I will go down the line of the statutory criteria. That the defendant has the mental capacity to appreciate his presence in relation to time, place, and things, I think that that factor Mr. Moya does meet. He wasI questioned him, and he's appeared in court many times, albeit withand most of the time with another family member as he is today, but he can appreciate his relation to time, place, and things. He understands where he is. He understands that he has to be at a certain place at a certain time. And he understands the concept of time because he's never been late to my court, and even before the lunch break he inquired specifically as to what time he's supposed to be back to make sure he wasn't late, and he's always been on time. So I find that factor he satisfies.
Number two, that his elementary processes are such that he comprehends that he is in a court of justice charged with a criminal offense. That there is a judge on the bench, and that there's a Prosecutor present who will try to convict him of a criminal charge. That he has a lawyer who will undertake to defend him against the charge. That he will be expected to tell the bestto the best of his mental ability the facts surrounding at the time and place where the alleged violation was committed if he chooses to testify, and understands his right not to testify. All those factors 2[a] through [e] are my problem factors.
Mr. Moya thus does not have a competent understanding of my role as a judge, and what I'm expected to do in a trial. I don't expect Mr. Moya to have a lawyer's understanding, or even a person who graduated high school understanding of the legal system and how I fit in it and what my job is. I don't find that Mr. Moya is ignorant. I find that Mr. Moya is intellectually disabled; and, therefore, it is not a matter of simply educating Mr. Moya and advising him and instructing him of what to expect in court. He is intellectually incapable of processing the information in a meaningful way; and, therefore, he does not understand what my job is the way a competent adult must. He doesn't understand what Mr. Sonntag's job is.
I'm satisfied that based on my own colloquy with Mr. Moya, and the review *610 of the experts who submitted their reports and testimony in this case, he has some general notion that Mr. Sonntag in [sic] on his side. That Mr. Sonntag is there to help him. That Mr. Sonntag will try to fix things to use his words. He doesn't understand that Mr. Sonntag is an attorney assigned to represent him in a criminal process, and that the role that Mr. Sonntag has in that context.
He has some general notion that Miss Rockfol speaks on behalf of the alleged victim in this case. That her responsibility should be to represent her interest. He does not understand the Prosecutor's position in terms of their obligation to convict him beyond a reasonable doubt of the charges that he's facing. He doesn't understand what the jury is about. He doesn't understand that the jury's function is to be the fact finder in this case. And he does not have the mental capacity to meaningfully discuss with his lawyer his rights to proceed to trial or not to proceed to trial, to engage in plea bargaining, and to waive his rights under the Constitution not to go to trial and accept a plea offer.
And most importantly, he doesn't have any notion of strategically or even meaningfully whether he should or should not participate in the trial process by being a witness for himself or remaining silent.
I find Mr. Moya, based on all these findings, to be incompetent to stand trial, and since Mr.Dr. Fulford and Dr. Simring both agree that mental retardation, which is what Mr. Moya suffers from, is a condition that is not subject to change or improve in the future. This is akin to an organic problem that Mr. Moya will have for the rest of his life, and there's no reasonable prospect that Mr. Moya will regain his competence.
It is evident from our review of the record that the judge's negative conclusions reached as to sub-paragraphs (e), (f) and (g)[5] of N.J.S.A. 2C:4-4b(2), were largely predicated upon the information deficits exhibited by defendant in his responses to the information-seeking questions of subparagraphs (a) through (d)[6], compounded by his less than sophisticated vocabulary skills. While the conclusions may well be correct, we are loathe to afford them deference absent any indication that defendant was first adequately instructed by the court respecting the N.J.S.A. 2C:4-4b(2) factors, before being questioned as to his understanding. Moreover, as no proposed plea was presented in the record, no inquiries could be directed to the defendant to determine the extent to which he might comprehend its consequences.
We reverse the determination of incompetency and remand with directions that the judge arrange for provision of the information discussed above to the defendant in a manner which in his judicial discretion, is deemed at least as clear as that imparted to prospective jurors. Thereafter, after again questioning the defendant, the competency issue shall be reconsidered.

Danger
When a court determines that a defendant lacks fitness to proceed and has not regained fitness within three months, it must consider whether the charges should be dismissed with prejudice or held in abeyance. N.J.S.A. 2C:4-6c. In determining whether charges against an incompetent defendant shall be held in abeyance or dismissed after the three month period following the initial determination of incompetency, *611 the court is required to consider, not only factors relating to the defendant's competency, but "the nature and gravity of the crimes charged; the effects of delay on the prosecutor; the effects of delay on the defendant, including any likelihood of prejudice to the defendant in the trial arising out of the delay, and the public interest in prosecuting the charges." N.J.S.A. 2C:4-6c. There is a presumption that charges against an incompetent defendant should be held in abeyance and that presumption is overcome only upon a determination, applying the factors noted above, that in the particular circumstances of the case, the undue delay creates a constitutionally significant injury to the defendant. N.J.S.A. 2C:4-6c. Plainly, a prime issue for judicial inquiry is whether such a defendant is so dangerous to himself or others as to require institutionalization or whether placement in an out-patient setting or release is appropriate. N.J.S.A. 2C:4-6b.
As noted in the Assembly Judiciary Committee Statement to Assembly Bills Nos. 450 and 686, which were enacted as Chapter 133 of the Laws of 1996, the current language of N.J.S.A. 2C:4-6c was intended to address legislative concern about cases in which charges against an incompetent are prematurely dismissed with prejudice. The statute leans toward holding a matter in abeyance, although always subject to correction for constitutionally significant injury arising from undue delay in bringing a defendant to trial. See Jackson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 1859, 32 L.Ed.2d 435, 451 (1972); State v. Gaffey, 92 N.J. 374, 388-89, 456 A.2d 511 (1983).
In the present case, defendant was examined during the several years after indictment by three psychiatric and psychological experts consistent with the provisions of N.J.S.A. 2C:4-5. N.J.S.A. 2C:4-5b provides in pertinent part that,
the person or persons conducting the examination may ask questions respecting the crime charged when such questions are necessary to enable formation of an opinion as to a relevant issue, however, the evidentiary character of any inculpatory statement shall be limited expressly to the question of competency and shall not be admissible on the issue of guilt.
Inasmuch as one "relevant issue" is the question of danger, it is evident that this legislation contemplates that an inquiry respecting the crimes charged may be appropriate not only with respect to the issue of competency but to the issue of danger which must be resolved by the trial judge. Our view is confirmed by the enumeration of factors, such as the nature and gravity of the crimes charged and the public interest, that the court must consider in making the N.J.S.A. 2C:4-6c decision.
Whether to dismiss with prejudice immediately or to continue some form of monitorship for a reasonable period, as requested by the State, requires, among other things, evaluation of "the nature and gravity of the crimes charged." Where, as here, a defendant appears to have confessed to crimes as grave as two attempted rapes and a robbery, we think that the judicial duty to balance the societal interest in protection against the rights of the individual incompetent could not adequately be fulfilled without a factual exploration sufficient to indicate the likelihood that defendant committed the offenses chargednot, of course, for use in a trial as to guilt, but solely on the issues of competency and danger.
There was little or no record made to support the judge's conclusion that defendant presented no danger to himself or society. The court-appointed expert, Dr. Sandoval, whose February 14, 1996 report concluded that defendant was competent to stand trial, also stated that "[a]t the time of the assessment, Mr. Moya is not considered to be a danger to himself or to others." No factual basis for this conclusion, however, is set forth in the report. Indeed, there is a handwritten addendum *612 by Dr. Sandoval indicating that he was not provided with any discovery documents or pre-investigation papers respecting the charges against defendant. On the issue of danger, therefore, Dr. Sandoval's assessment is plainly a factually unsupported net opinion. Dr. Fulford, defendant's expert, declined to find that defendant presented a danger, reasoning that he had not been convicted. Dr. Simring found defendant to be competent, largely on the basis of defendant's coherent and detailed description of one sexual incident, his stout denial of involvement in the other sexual incident, and his contention that the incriminating statements had been secured in violation of his rights by beatings and coercion. In consequence, Dr. Simring did not opine as to the issue of danger.
The judge's determination that defendant presented no danger was predicated partly on the absence of findings of danger by the experts, and partly upon defendant's punctual and regular attendance in court and the judge's belief that defendant's grandmother was looking after him. Although recognizing that defendant had been arrested on an unrelated minor charge, the judge does not appear to have considered the assistant prosecutor's explanation during oral argument in the final N.J.A.C. 2C:4-6 proceeding that the decision not to prosecute the subsequent matter was made because of the court's prior determination that defendant was incompetent.
The determination of dangerousness involves prediction of a defendant's future conduct rather than mere characterization of his demonstrated past conduct. State v. Krol, 68 N.J. 236, 260-61, 344 A.2d 289 (1975). However past conduct is important evidence as to probable future conduct and should be given substantial weight in a dangerousness determination. Ibid. While the final determination respecting the potential danger presented by defendant lies with the courts and not the expertise of psychiatrists and psychologists, In re D.C., supra, 146 N.J. at 59, 679 A.2d 634, we cannot agree that the factual basis for the conclusion of non-dangerousness made by the trial judge was sufficient to support the absence-of-danger determination. At the very least, there should have been an exploration into the question whether defendant did commit the crimes charged before dismissing the indictment with prejudice and without any supervisory conditions.
The concern expressed by the assistant prosecutor about the unconditional release of defendant reflects a similar concern evidenced by the Legislature when it adopted the New Jersey Sexually Violent Predator Act (the Act), N.J.S.A. 30:4-27.24 to -27.38. We note that the definition of "sexually violent predator" contained in the Act includes persons "charged with a sexual violent offense but found to be incompetent to stand trial." N.J.S.A. 30:4-27.26. While the Act was not effective during the periods relevant to the present proceeding, it informs our evaluation of the degree of judicial inquiry required on the issue of protection of community before unconditionally releasing such a defendant on a finding of no danger. It should be determined, if possible, solely for purposes of the dangerousness decision, whether defendant committed the sexually violent acts to which he confessed.
There are further benefits to the public in exploring this issue. If the second sexual incident, as to which defendant disclaimed all knowledge to the examining experts, was not committed by him, then an offender remains at large. The police may have improperly coerced a confession from a pliant person of borderline intelligence. Neither possibility should go unexplored.
Upon the remand which we have ordered respecting competence, the Court should also reassess the issue of danger in light of the above considerations.

*613 Unconstitutional Delay

We may not, and do not ignore the fact that the trial judge also concluded that there had been undue delay in bringing defendant to trial.
The Supreme Court has made it clear, however, that an unconditional dismissal with prejudice is not automatically required when a defendant is deemed incompetent to stand trial. While elemental fairness and due process considerations are applicable to avoid constitutionally significant injury attributable to undue delay, the validity of claims relating to speedy trial should be made on a case-by-case basis in terms of the prejudice to defendant's rights that can actually be shown or reasonably be inferred from the delay. Gaffey, supra, 92 N.J. at 388-89, 456 A.2d 511. This requires more than mere reliance upon the length of time elapsed.
As first largely set forth in Gaffey, supra, and now echoed in N.J.S.A. 2C:4-6c, resolution of the issue of dismissing with prejudice or holding charges in abeyance can be constitutionally accomplished by weighing the following factors:
the defendant's prospects for regaining competency; the period of time during which the defendant has remained incompetent; the nature and extent of the defendant's institutionalization; the nature and gravity of the crimes charged; the effects of delay on the prosecution; the effects of delay on the defendant, including any likelihood of prejudice to the defendant in the trial arising out of the delay; and the public interest in prosecuting the charges.

[N.J.S.A. 2C:4-6c]
Because our remand of the trial judge's determinations on the issues of competency and dangerousness arises from an insufficient record, those 6c factors should again be addressed after the directed reconsideration. In weighing the effects of delay on the defendants and prosecution, the judge should consider availability of witnesses, preservation of evidence, and the extent to which the delay may have resulted from causes attributable to the defense, including the several professional examinations made after the issue of competency was raised by defendant.
We do not rule out the possibility that, as even more time will have elapsed by the time the question of undue delay is once more considered, the judge may reasonably determine that defendant's constitutional right to a speedy trial has been compromised. On the record before us, however, we are satisfied that the present determination of an unconstitutional delay was, like the incompetence and danger issues, insufficiently supported.
The order of dismissal with prejudice is reversed. Remanded for further proceedings consistent with this opinion.
NOTES
[1] Defendant's I.Q. scores, accepted by the several experts whose reports and testimony were considered by the court, were: verbal, 66; performance 52; and full scale, 58. The experts also agreed that this placed defendant in the mildly retarded or borderline category of intellectual functioning. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 442 n. 9, 105 S.Ct. 3249, 3256 n. 9, 87 L.Ed.2d 313, 322 n. 9 (1985)(discussing the categories of retardation).
[2] The judge concluded that defendant had the capacity to appreciate his presence in relation to time, place and things, but concluded that the proofs did not establish the comprehension required by N.J.S.A. 2C:4-4b(2):

(a) That he is in a court of justice charged with a criminal offense;
(b) That there is a judge on the bench;
(c) That there is a prosecutor present who will try to convict him of a criminal charge;
(d) That he has a lawyer who will undertake to defend him against that charge;
(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;
(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and
(g) That he has the ability to participate in an adequate presentation of his defense.
[3] Defendant had nominally completed the 9th grade in special schools in Florida and New Jersey, and was able to describe each of them, and even to correct the judge's reference to an "old" name for one of his schools.
[4] The statements were not included in the appendices. The State asserts that police reports embodying their content were before the trial judge.
[5] Understanding of right to testify or not, the role of the jury, the consequences of a negotiated guilty plea should one be negotiated, and the ability to intelligently waive rights upon entry of a plea and ability to participate in the defense.
[6] Defendant's understanding that he is in court charged with a criminal offense, that there is a judge who will preside over the trial on the criminal charge, that a prosecutor will try to secure his conviction, and that he has a lawyer who will under-take the defense.