**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3012-22

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

T.J.G.,

    Defendant-Respondent.

_____

Argued November 29, 2023 – Decided April 4, 2024

Before Judge Vernoia and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-05-0364.

Michele C. Buckley, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

John P. Flynn, Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; John P. Flynn of counsel and on the brief).

PER CURIAM

This is the State's appeal from an order entered on May 31, 2023 granting defendant's motion to dismiss the indictment against him with prejudice based on a finding of incompetency pursuant to N.J.S.A. 2C:4-6(c).[1] On appeal, the State argues the court abused its discretion in dismissing the indictment with prejudice because defendant failed to demonstrate he suffered constitutional harm. We disagree and affirm for the reasons that follow.

The essential facts are not in dispute. On March 19, 2021, police officers responded to a report of a suspicious and apparently disoriented person in the vicinity of a local car repair shop. When officers arrived, emergency medical technicians (EMTs) were already on the scene and were speaking with defendant.

Officers determined the car defendant had been operating was registered to E.G., defendant's mother. Officers then drove defendant to E.G.'s address where they met with her. During this meeting, E.G. identified defendant as her son and explained to officers that he had been diagnosed with bi-polar and schizoaffective disorder, had not been taking his medication, and had been

---

[1] Due to the discussion of respondent's psychiatric condition, we refer to respondent and a family member by initials pursuant to Rule 1:38-3(a)(2).

A-3012-22

acting erratically.  E.G. also advised that defendant had not slept for two days and had been carrying around a hammer that he intended to use to protect the family from gang members he believed would kill him and his family.  E.G. also reported to officers that she had previously attempted to have defendant evaluated to no avail.

One of the responding officers, Brian R. Regenthal, remained in the home with E.G. and defendant to await the arrival of a mental health screener who had been summoned to evaluate defendant.  At some point during the approximately ninety-minute wait, Officer Regenthal left defendant unattended when he went to his car to retrieve his cell phone.  While the officer was absent, defendant retrieved two hammers, which he began brandishing when Officer Regenthal returned from his car.  Defendant struck Officer Regenthal on the side of his head causing lacerations to his ear.  The entire incident was captured on the officer's body worn camera and witnessed by another officer and defendant's parents.

Officer Regenthal was transported to a local hospital, treated with Bacitracin and Dermabond, and released approximately three hours later. Defendant was placed under arrest and transported to a local jail.  Five days

later, defendant was ordered to submit to a mental evaluation[2].  Dr. Toni-Lynne Calabrese, D.O., a licensed psychiatrist from the Ann Klein Forensic Center (Ann Klein) conducted the psychiatric evaluation and issued a report dated May 7, 2021.  She diagnosed defendant with schizoaffective disorder, bi-polar type, and found him to be a danger to himself and others.

On June 9, 2021, the court issued an order civilly committing defendant to Ann Klein due to his lack of fitness to proceed to trial based on a determination he was a danger to himself, others, and property, pursuant to N.J.S.A. 2C:4-6(b).

On May 11, 2022, a Union County grand jury returned an indictment charging defendant with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); two counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) and 2C:12-1(b)(5)(a); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

---

[2] In an order dated March 24, 2021, the court ordered defendant's examination by a qualified psychiatrist or licensed psychologist pursuant to N.J.S.A. 2C:4-5(a) to determine his fitness to proceed to trial.

Over the ensuing approximately one-and-one-half years, defendant underwent additional competency reviews,[3] each concluding he lacked fitness to stand trial. Thereafter, approximately two years after he had been admitted to Ann Klein, defendant moved to dismiss the indictment against him with prejudice.

At an ensuing competency review hearing, the court first noted that "there seems to be no contest right now in terms of competency of [defendant] to stand trial . . . by either the State or the defense[.]" The court framed the issue to be decided as "whether [defendant] should continue to be detained on these charges or whether the charges should be dismissed . . . ."

Defendant called Dr. Calabrese to testify regarding his fitness to proceed to trial. Dr. Calabrese was not defendant's treating doctor, but had previously evaluated him and prepared at least five reports. She had also previously diagnosed defendant with schizoaffective disorder, bipolar type, which she described as "typically chronic disorders." Dr. Calabrese testified about the difficulty managing defendant's medications and concluded "[h]is prognosis really is . . . at best, guarded." In response to defense counsel's question

---

[3] Defendant underwent five periodic reviews of his competency on June 9, 2021, August 20, 2021, February 23, 2022, August 19, 2022, and February 27, 2023. Each review found defendant incompetent to stand trial.

regarding the likelihood of "mental recovery[,]" Dr. Calabrese responded, "it's very low I would say at this point." She also noted, however, that she was aware that defendant's treating doctor "may be looking to make some medication adjustments . . . but there is still the level of paranoia, irritability, impaired reality testing, [and] delusional thinking[.]" When asked if any modifications to defendant's medications would have some impact on his mental health, Dr. Calabrese's response was "it's extremely limited . . . it's limited particularly since he is still delusional about the events that led to his arrest which then impacts his ability to consider options such as an insanity defense."

On cross-examination, Dr. Calabrese acknowledged "there is still some additional treatment that's available to" defendant. She concluded, however, that given defendant's condition, defendant continued to meet the standard for civil commitment.

On May 31, 2023, more than two years after defendant's arrest, the court issued a thorough and well-written opinion dismissing the indictment against him with prejudice. Accepting Dr. Calabrese's uncontested testimony as credible and weighing the factors set forth in N.J.S.A. 2C:4-6(c), the court found "continuing the criminal prosecution under the particular circumstances of the case would constitute a constitutionally significant injury to the defendant."

6

And, relying on N.J.S.A. 2C:4-6(c), the court concluded "defendant has been hospitalized for more than two years," and that his

> lack of competency prevents him from resolving the case, and it is his incompetency thus that is requiring him to spend more time in custody than if he were competent. Given that it is this court's determination that there is no reasonable likelihood that defendant will regain his competency, the court finds the public interest in the further prosecution of the defendant is minimal. In balancing these factors and giving greater weight to the finding that defendant is unlikely to regain his competency, the court finds that continuing the criminal prosecution under the particular circumstances of the case would constitute a constitutionally significant injury to the defendant attributable to undue delay in being brought to trial.

The State sought and was granted a stay pending this appeal.[4]

## I.

On appeal, the State advances multiple arguments in support of its contention the court abused its discretion by dismissing the indictment with

---

[4] During the pendency of this appeal, another judge ordered defendant transferred from Ann Klein to Greystone Park Psychiatric Hospital, a less restrictive environment.

prejudice.  Focusing on the seriousness of the offenses charged in the indictment and the legitimacy of defendant's pretrial commitment, the State maintains:

> defendant's commitment status was found appropriate by Judge Isenhour, as well as the civil commitment court.  Further both parties and Dr. Calabrese agree . . . defendant is, and will be for the foreseeable future, not only a proper subject for pretrial commitment under N.J.S.A. 2C:4-6 but also civil commitment pursuant to [Rule] 4:74-7.  Therefore, defendant's confinement alone does not constitute a constitutionally significant injury in this case.

Weighing the factors under N.J.S.A. 2C:4-6(c), the State also argues that there is "always a public interest in the prosecution of these types of charges" and "there was no contention by the State or defendant that the strength of their respective cases would be harmed by the delay[,]" and thus, "after only two years of being detained, that defendant would not suffer a 'constitutional significant injury' requiring dismissal of the [i]ndictment with prejudice."

Additionally, the State argues the court improperly considered factors unrelated to the statutory factors set forth in N.J.S.A. 2C:4-6(c), including that defendant's confinement at Ann Klein was inhibiting treatment that might have been available to him in a less restrictive environment, the facts of this case "clearly warrant treatment as a third-degree offense, even after conviction[,]" and "mistakenly implemented" our Supreme Court's instruction in In the Matter

of the Release of Certain Pretrial Detainees, 245 N.J. 218 (2021), to consider "plea offers and anticipated outcomes as part of its overall analysis in determining whether a detained defendant should be released because of delays in bringing the matter to trial."

By contrast, defendant contends the court appropriately considered all factors set forth in N.J.S.A. 2C:4-6(c) and reasonably exercised its discretion in dismissing the indictment because "defendant had not become competent in the two years and two months he remained confined at Ann Klein and that there were no reasonable prospects that he would become competent with further treatment."

## II.

N.J.S.A. 2C:4-6(c) provides "for the dismissal of charges against a defendant who has been adjudged incompetent where . . . the defendant has remained unfit to stand trial for a sufficient period of time[.]" State v. Gaffey, 92 N.J. 374, 379 (1983). When a defendant "has not regained fitness within three months" following the court's initial determination of incompetency, the court must consider whether to dismiss the charges with prejudice or hold further proceedings in abeyance. N.J.S.A. 2C:4-6(c). In making its determination, the court shall weigh the following enumerated statutory factors:

the defendant's prospects for regaining competency; the period of time during which the defendant has remained incompetent; the nature and extent of the defendant's institutionalization; the nature and gravity of the crimes charged; the effects of delay on the prosecution; the effects of delay on the defendant, including any likelihood of prejudice to the defendant in the trial arising out of the delay; and the public interest in prosecuting the charges.

[N.J.S.A. 2C:4-6(c).]

Although a presumption exists "that charges against a defendant who is not competent to proceed shall be held in abeyance[,]" it may be overcome "only if the court determines . . . that continuing the criminal prosecution . . . would constitute a constitutionally significant injury to the defendant attributable to undue delay in being brought to trial." N.J.S.A. 2C:4-6(c); see Jackson v. Indiana, 406 U.S. 715, 738 (1972) (holding that a person charged with a criminal offense who is committed for an indefinite period of time solely on account of his incompetency to stand trial is deprived of his Fourteenth Amendment rights to due process and equal protection). "In weighing the effects of delay on the defendant[] . . . the judge should consider availability of witnesses, preservation of evidence, and the extent to which the delay may have resulted from causes attributable to the defense[.]" State v. Moya, 329 N.J. Super. 499, 515 (App. Div. 2000).

10

In Gaffey, our Supreme Court held dismissal of criminal charges is justified when "the [statutory] factors coalesce to establish the untenability of continuing a criminal prosecution." 92 N.J. at 389. In contrast, when this result "is not demanded by the weighing of all relevant evidence," the court may, in its sound discretion, either dismiss the indictment without prejudice or hold further proceedings in abeyance. Ibid. Ultimately, the decision to dismiss or hold in abeyance is "in the sound discretion of the court" and thus subject to an abuse of discretion standard on review. Ibid. Appellate courts find abuse of discretion when the trial court comes to a decision by "relying on an impermissible basis, by relying upon irrelevant or inappropriate factors, by failing to consider all relevant factors, or by making a clear error in judgment." State v. Mercedes, 233 N.J. 152, 166 (2018) (quoting State v. S.N., 231 N.J. 497, 500 (2018)).

Pertinent to our determination of whether the court abused its discretion in dismissing the indictment is whether the court considered, weighed and balanced all relevant factors in dismissing the charges against defendant.[5] We note that in its review of the statutory factors, the court considered the period of time during which defendant had been hospitalized—more than two years—and

---

[5] Because there are no factual disputes in this record and both parties rely upon the correct statutory provisions, we note the sole issue is one of legal interpretation of the relevant statutory factors.

A-3012-22

the lack of success of his treatment at Ann Klein in restoring him to competency. Specifically, the court considered that Ann Klein had "utilized five antipsychotic medications, as well as other medications, in difference combinations and doses" and "all counseling therapies available to them . . . as well as the Legal Competency Restoration Program." Recognizing these treatments and medications were not successful, the court gave great weight to Dr. Calabrese's testimony and concluded there was "no reasonable expectation or probability that defendant will regain his competency to stand trial in the near future."

The court further considered the restrictive nature of defendant's confinement at Ann Klein and Dr. Calabrese's testimony that Ann Klein is a "highly structured maximum-security setting" which "lacks programs their lower security regional hospitals have."

With respect to the nature and gravity of the crimes charged, the court acknowledged the seriousness of the crimes. However, the court found the public interest in pursuing prosecution was not outweighed by the violent nature of the alleged offenses. Based on the court's determination that "the statute requires a more searching inquiry," the court gave significant weight to the unique facts of the case, stating:

> Defendant is a young man with no criminal history who while in the midst of a psychotic episode likely brought

12

on by his failure to take his medication, attacked a police officer with a deadly weapon and caused bodily injury to him. That the officer was treated with Dermabond and Bacitracin, and quickly released, support this conclusion that it was only bodily injury.

With respect to the effects of the delay on both the State and defendant, the court noted this factor "was harder to assess" but found no significant speedy trial issue given that the witnesses were readily identifiable, the entire incident was captured on officer body worn camera, and there is no dispute about the factual basis of the allegations.

With respect to the public's interest in continuing prosecution, the court weighed this factor against the likelihood of prejudice to defendant noting that defendant "had already been detained in a more restrictive setting than he would have been detained had he been sentenced to jail or prison." This finding was significant to the court given its understanding of the case as one "clearly warrant[ing] treatment as a third-degree offense" and the likelihood that the case "would have resolved in the three-year range, if not lower, subject to defendant continuing his mental health treatment." Accordingly, the court found "the only obstacle in accomplishing that goal" was defendant's lack of competency to proceed, thus resulting in him remaining in custody for a longer period of time than if he were competent. Given the court's determination that there was no

reasonable likelihood defendant would regain his competency, the court found the public's interest in further prosecution was not outweighed by the prejudice defendant would face as a result of continued commitment.

We therefore discern no abuse of discretion by the judge in dismissing the indictment, with prejudice, based on his consideration of the N.J.S.A. 2C:4-6(c) factors, and we reject the State's argument that the court erred in its consideration of the N.J.S.A. 2C:4-6(c) factors. We similarly reject the State's argument the court abused its discretion by considering additional factors—not expressly enumerated in the statute—including that defendant's confinement at Ann Klein had inhibited treatment that might have been available to him in a less restrictive environment and that the charges clearly warranted treatment as a third-degree offense.

We note, however, that in considering the relevant statutory factors, the court did not expressly correlate their significance to its determination whether continuing to hold the charges in abeyance would cause a "constitutionally significant injury . . . attributable to undue delay in being brought to trial." As noted by the court, it found no significant speedy trial issue given that the witnesses were readily identifiable, the entire incident was captured on the

14

officer's body worn camera, and there is no dispute about the factual basis of the allegations.

Rather, our review of the court's written opinion confirms its adherence to the statutory requirements as prescribed by our Supreme Court's decision in Gaffey, as defendant's confinement can fairly be considered under the "nature and extent of defendant's institutionalization" factor, 92 N.J. at 389, and whether the charges in the indictment are likely to be reduced at the time of a plea is not inconsistent with the court's consideration of "the nature and gravity of the crimes charged." In any case, the court's discussion of these "additional factors" as argued by the State, cannot be said to be so off the mark as to be deemed irrational and, therefore, did not constitute an abuse of discretion. Mercedes, 233 N.J. at 166.

Critically, the court did consider whether the delay in prosecuting the defendant would constitute a constitutionally significant injury. The court addressed this issue when it analyzed the "elemental fairness and due process" considerations under Moya, 329 N.J. Super. at 511, finding the statutory factors under N.J.S.A. 2C:4-6(c) "go beyond only speedy trial concerns," and addressing defendant's prospects for regaining competency; the two-year period during which he had remained incompetent; the nature and extent of the

institutionalization at Ann Klein; the nature of the crimes charged; the effects of delay on the prosecution of defendant, including any likelihood of prejudice to the defendant in the trial arising out of the delay; and the public interest in prosecuting the charges.

In so doing, the court considered that defendant's prospectives for restoration of competency essentially remained unchanged from Dr. Calabrese's first report dated May 7, 2021, to her testimony during the March 13, 2023 hearing. The court determined, based on Dr. Calabrese's testimony, defendant was unlikely to regain competency to stand trial. The State offered no evidence to the contrary, relying instead upon the argument that the two-year period the charges were held in abeyance was insufficient to be constitutional significant. We are thus persuaded that in addressing defendant's claims the continued pendency of the charges deprive him of his right to be treated in a less restrictive environment than Ann Klein, the court properly applied due process considerations in concluding that the presumption to hold the charges in abeyance was overcome.

We discern no abuse of discretion in the court's determination. Its decision is supported by substantial credible evidence, the court's credibility findings, and Dr. Calabrese's testimony, on which the court based its conclusion

16

that continuing to hold the charges in abeyance would otherwise deprive defendant of his constitutional right to be treated in a less restrictive environment at the time of the hearing.

To the extent we have not considered any other arguments raised by the State, we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3012-22