# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5632-18T1

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

D.L.,[1]

     Defendant-Respondent.

_____

Submitted January 29, 2020 – Decided March 17, 2020

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 17-06-0496.

Charles A. Fiore, Gloucester County Prosecutor, attorney for appellant (Timothy James Gaskill, Assistant Prosecutor, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (John Walter Douard, Assistant Deputy Public Defender, of counsel and on the brief).

---

[1] We employ initials to protect the confidentiality of the alleged victims of sexual offenses. R. 1:38-3(c)(12).

PER CURIAM

By leave granted, the State appeals from the July 26, 2019 Law Division order dismissing an indictment with prejudice pursuant to N.J.S.A. 2C:4-6(c), which authorizes such dismissal when the court determines the defendant lacks fitness to stand trial, "has not regained his fitness to proceed within three months," and "continuing the criminal prosecution under the particular circumstance of the case would constitute a constitutionally significant injury to the defendant attributable to undue delay in being brought to trial." We affirm.

On June 28, 2017, following the issuance of complaint-summonses, a Gloucester County Grand Jury returned an indictment charging defendant with two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b). The charges stemmed from allegations that between 2012 and 2015, defendant engaged in sexual contact with his two half-sisters, "by touching or rubbing" their "genital area," beginning when they were five- and seven-years-old, and defendant was eighteen-years-old.

On February 13, 2018, at defense counsel's request, the trial court ordered an evaluation to determine whether defendant was competent to stand trial pursuant to N.J.S.A. 2C:4-5(a). After interviewing defendant at the Gloucester County Public Defender's Office on March 22 and April 26, 2018, reviewing

background information, which included defendant's medical, educational, occupational, and substance abuse history, as well as administering various psychological tests, Dr. Susie Chung, Ph.D., a clinical psychologist employed by Ann Klein Forensic Center (Ann Klein), submitted a report to the court dated June 1, 2018, concluding defendant was "incompetent to stand trial."

In the report, Chung recounted that defendant was "diagnosed with cerebral palsy at birth," "physically and emotionally abus[ed]" by his step-father, and hospitalized "for [i]npatient psychiatric treatment" after expressing suicidal ideation when he was arrested on the charges. Based on her evaluation, Chung diagnosed defendant with "[b]orderline [i]ntellectual [f]unctioning." She determined that defendant's "overall intellectual functioning [was] below average," and "he ha[d] deficits in his adaptive functioning," or "skills to live independently[]." Although inconsistencies in defendant's test data showed "some evidence that [defendant was] likely not responding with genuine effort," and could have been indicative of "feigned" as opposed to "true memory impairment," Chung ruled out "[m]alingering" in her diagnosis and concluded defendant's "intellectual functioning level may have negatively impacted his score[s]."

A-5632-18T1

Applying the competency to stand trial criteria delineated in N.J.S.A. 2C:4-4(b),[2] Chung determined defendant's "factual understanding of the legal process" was "superficial," and "[h]is rational ability to work with his attorney and to participate in the legal process" was "limited" as a result of his "cognitive deficits." Chung stated defendant was "probably unable to make a rational decision about testifying," "would not currently be able to knowingly, intelligently, and voluntarily relinquish those rights which are waived if one pleads guilty," and "does not appear to have the ability to participate in an adequate presentation of his defense, as his communication skills appear limited, and his ability to remember information seems impaired."

Although Chung opined defendant was incompetent to stand trial, relying on the test data, she noted defendant's "response style indicated that at best, he

---

[2] N.J.S.A. 2C:4-4(b) provides, in pertinent part, that "[a] person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish" that he "has the mental capacity to appreciate his presence in relation to time, place and things;" and "comprehends . . . [t]hat he is in a court . . . charged with a criminal offense;" "[t]hat there is a judge on the bench;" "[t]hat there is a prosecutor present who will try to convict him . . . ;" "[t]hat he has a lawyer who will . . . defend him . . . ;" that he understands what is "expected . . . if he chooses to testify and understands the right not to testify;" that he understands the role of the jury and "comprehend[s] the consequences of a guilty plea" if he "choose[s] to enter into plea negotiations or to plead guilty;" and "[t]hat he has the ability to participate in an adequate presentation of his defense."

was not putting forth genuine effort, and at worst, he was purposely giving wrong answers to the questions." Chung stated that given the "inconsistent data, it [was] difficult to form an opinion as to whether . . . defendant will regain his competence in the foreseeable future," but it was "possible that with additional education and training on competency-related skills, he may become competent to proceed." Notably, Chung also opined that defendant "does not appear to be at imminent danger to self, to others, or to property as a result of mental illness, since he does not have a mental illness." "However, his dangerousness risk (to himself more than anyone else) would be increased by the deficits in his adaptive functioning skills," and "deficits in judgment and decision-making as a result of his intellectual deficits would make him more susceptible to negative influences, particularly in an unstructured setting." Chung recommended that defendant "consult with a neurologist to assess" the impact of his reported history of seizures on his cognitive abilities.

There is no indication in the record that either party contested the report's findings as permitted under N.J.S.A. 2C:4-6(a). Thus, based on the report, on June 29, 2018,[3] the judge suspended the proceedings and ordered Ann Klein to restore defendant to competency, or determine whether or not he could be

---

[3] The transcript for that proceeding was not included in the record.

A-5632-18T1

restored. On January 4, 2019, the judge ordered Ann Klein to conduct another competency evaluation.[4] When the parties returned to court on February 22, 2019,[5] although Chung had interviewed defendant on February 15, 2019, her report was not completed. On March 28, 2019, Chung submitted a report to the court which essentially mirrored her prior report. On April 5, 2019, the judge conducted a testimonial hearing during which Chung, who was qualified without objection "as an expert in the area of clinical psychology for competency and ability to stand trial," testified for the State in accordance with her two prior reports, both of which were admitted into evidence.

During the hearing, Chung confirmed her ultimate opinion that defendant did "not appear competent to proceed," but reiterated her "caveat" that his "test results" on the Test of Memory Malingering (TOMM), a psychological test administered when "there is suspicion . . . that a person is feigning or exaggerating their cognitive impairment," "put[] into question whether . . . his

---

[4] In accordance with N.J.S.A. 2C:4-6(c), requiring the court to hold a hearing to determine whether the charges shall be dismissed with prejudice or held in abeyance "[i]f the defendant has not regained his fitness to proceed within three months," the judge ordered another competency evaluation on September 5, 2018, and scheduled a return date of October 15, 2018. However, because Ann Klein failed to comply with the judge's earlier orders, the parties did not return on the scheduled date.

[5] The transcript for that proceeding was not included in the record.

A-5632-18T1

responses were completely genuine and if he was being fully forthcoming." Chung explained she did not believe defendant was "malingering" in the sense that he was "purposefully feigning symptoms." However, "there [was] still the question that for whatever reason[,] he [was] not giving [her] his best effort."

Chung testified "it [was] possible [defendant] could be restored to competency, but it [was] possible he might not be." She explained she could not form a definitive conclusion about his prospects of restoration for "a variety of reasons." First, "when there is evidence of intellectual disability" as in defendant's case, "those individuals sometimes . . . take[] . . . longer to learn new information," given the fact that defendant "never had exposure to . . . the criminal justice system before." The "second [reason was] that there [was] still the question of . . . malingering." Finally, "because of the possibility that there [were] medical issues . . . interfering with his ability to learn and to retain information related to how the court process works," she referred to the recommendation in her reports that defendant be examined by a neurologist to "rule out . . . that seizures . . . could possibly interfere with his ability to learn the information." She noted however that "Ann Klein [did not] provide that [service]."

Chung recommended that defendant should first participate in "an outpatient restoration program." Although she testified extensively about the inpatient restoration program conducted by Ann Klein to restore institutionalized individuals previously found incompetent to stand trial, she confirmed that Ann Klein did "not provide an outpatient restoration program" and did not "pay private facilities to provide outpatient restoration." She was also unaware of any privately-run outpatient programs that would address the same issues.

Oral argument was conducted on April 22, 2019. Based on Chung's testimony and reports, the prosecutor did not "dispute the finding of [in]competency" or lack of dangerousness. However, "since there ha[d] not been a determination that competency [could not] be restored," and "there appear[ed] to be a lot of unknown[s] surrounding the ability to [restore defendant] . . . to competency," he believed there was a "need to find some way of at least attempting to restore competency." The prosecutor noted that N.J.S.A. 2C:4-6(b) authorized the court to place a defendant in an out-patient setting, or, alternatively, commit a defendant to the custody of the Commissioner of Human Services for placement in an appropriate institution "for inpatient

treatment for those who are found to be a danger to themselves or others."[6] The prosecutor pointed out that the statute provided for "outpatient treatment" as an "alternative . . . without . . . actually provid[ing] any sort of outpatient treatment for th[o]se individuals." While admitting that Ann Klein's inpatient restoration program was "the only treatment . . . available in the State of New Jersey . . . for restoring competency," the prosecutor acknowledged it was not the "most appropriate course of action" for defendant given his lack of dangerousness, and conceded that he was "asking for treatment that appears to [not exist] at this time."

Based on Chung's "credible" testimony, the judge found defendant was "not competent to stand trial," and was not "a danger to himself or others or property" to "require institutionalization," and "suspended" the proceedings "for a period of three months." Although the judge acknowledged the seriousness of the charges, because defendant was not "a danger to himself or others," had appeared at "every [court] listing" while released, and had no prior record, she

---

[6] N.J.S.A. 2C:4-6(b) provides in pertinent part "[i]f the court determines that the defendant lacks fitness to proceed" and suspends the proceedings, he or she may be committed to "the custody of the Commissioner of Human Services to be placed in an appropriate institution if it is found that the defendant is so dangerous to himself or others as to require institutionalization, or it shall proceed to determine whether placement in an out-patient setting or release is appropriate[.]"

determined that commitment to the custody of the Commissioner of Human Services for participation in Ann Klein's inpatient restoration program was not appropriate, and any restorative services provided would have to be in an out-patient setting pursuant to N.J.S.A. 2C:4-6(b).

On April 25, 2019, defendant moved to compel Ann Klein to provide him with legal competency restoration services. Ann Klein opposed the motion, asserting that "N.J.S.A. 2C:4-6 neither provide[d] a basis to permit [d]efendant . . . a non-committed individual . . . to participate in its [c]ompetency [r]estoration [p]rogram nor obligate[d it] to find a suitable alternative out-patient program." In a supporting certification, David Kensler, Ann Klein's Chief Executive Officer, averred that Ann Klein only "provide[d] competency restoration programs [to] individuals who are [already] civilly committed to its care and meet certain clinical eligibility criteria." According to Kensler, because "[t]he competency restoration program includes group sessions" with "individuals deemed to be dangerous to self or others," for safety and "security reasons, the competency restoration program cannot be provided on an outpatient basis to visitors who are not committed" to the facility. Kensler also certified Ann Klein had "neither the infrastructure nor the authority to provide competency restoration services in the community."

 A-5632-18T1

On July 3, 2019, defendant moved to dismiss the charges with prejudice pursuant to N.J.S.A. 2C:4-6(c). On July 19, 2019, the judge conducted a hearing on both of defendant's pending motions.[7] During the hearing, the prosecutor opposed the dismissal with prejudice, arguing that both the "presumption" and the "factors [contained in N.J.S.A. 2C:4-6(c)] weigh[ed] in favor of an abeyance." In support, the prosecutor argued the charges were "very serious,"[8] there was "a serious public interest in prosecuting somebody for second-degree sexual charges," defendant was "not being prejudiced by a delay" because he was not confined in a jail or an institution "waiting for a resolution," and there was no expert opinion "that he cannot be restored to competency." The prosecutor urged the court to hold the charges in abeyance for another "six months" so that he could "look into . . . getting another expert to . . . mak[e] a[n] [actual] determination . . . of whether or not [defendant] can be restored," a determination Chung "seem[s] unable to make." The prosecutor also asserted it was not the State's "burden" to "fix" the "lack of resources." Rather, "the burden

---

[7]  The parties appeared on June 28, 2019, to consider Ann Klein's response. However, the judge agreed to relist the motion on the next return date.

[8]  During the April 22, 2019 oral argument, the prosecutor had described the charges as a product of "late reporting . . . from a pretty long time ago."

A-5632-18T1

[was] on the system itself to have [an outpatient restoration] program that the statute require[d]."

In contrast, while acknowledging that "the State . . . enjoy[ed] a presumption . . . against the dismissal," defendant argued that given the unavailability of any outpatient restoration program, the presumption was overcome because "continuing criminal prosecution under this circumstance would constitute a constitutionally significant injury to . . . defendant[] attributable to undue delay[] in being brought to trial." In support, relying on the statutory factors, defendant pointed to the significant "[t]hirteen-month[]" period "during which defendant has remained incompetent," the adverse "effects o[f] the delay," including the likelihood of "the memories of . . . [favorable] defense witnesses" "fad[ing]" as "more time . . . passes" since the crimes allegedly began over seven years ago, as well as the fact that "the parents of the victims have [not] been involved in th[e] case," cannot be located, and previously stated they "did not want [defendant] placed in jail." Defendant added "it shocks the consci[ence] that a year has passed since he was found to be incompetent and nothing has been done to attempt to restore him[,] and the State still wants to drag it out for six more months with no plan in place to attempt to restore [him]," when "absolutely nothing will have changed between

12

now and six months from now in regard to restoring him or . . . [his] status of . . . [in]competency."

Following oral argument, the judge denied defendant's motion to compel Ann Klein to provide restoration services to defendant on an outpatient basis, concluding that Ann Klein's program was not suited "for outpatients" and the "[c]ourt has no authority to compel [Ann Klein] to come up with a program." However, the judge granted defendant's motion to dismiss the indictment with prejudice but stayed the July 19, 2019 memorializing order for forty-five days.

In an oral opinion, the judge recounted she previously found defendant "not competent," and "not a danger to himself and/or the community," and "held the matter in abeyance" to find an outpatient restoration program. However, "there are no programs within this [S]tate that [have] been brought to the [c]ourt's attention that . . . [defendant] can access . . . in order to attempt to restore him to competency." The judge continued

> this matter has been suspended for almost two years waiting for him to be restored to competency. I still don't have a program to put him into in order to try to facilitate that, and it would be a futile effort to just postpone it with no program, no services, nothing in effect to try to restore him to competency.

Relying on Jackson v. Indiana, 406 U.S. 715 (1972), the judge acknowledged "[a] competent individual has a right to have his criminal matter

13

proceed to trial." However, "[w]e cannot proceed to trial because of [defendant's] incompetence." The judge concluded to continue to hold the proceedings in abeyance after having "postponed it on several occasions to see whether we could come up with a way to restore him" to competence "would be a violation of due process" because no such program exists, and that fact will not change if another postponement is granted. This appeal followed.

On appeal, the State raises the following points for our consideration:

POINT I

THE COURT LACKED INFORMATION NEEDED TO DETERMINE WHETHER RESTORATION TO COMPETENCY WAS POSSIBLE.

POINT II

STATE LAW REQUIRES PROGRAMS TO BE MADE AVAILABLE THAT THE DEFENDANT WAS PROHIBITED FROM PARTICIPATING IN.

POINT III

THE COURT IMPROPERLY BALANCED THE FACTORS IN FAVOR OF DISMISSAL.

"When a court determines that a defendant lacks fitness to proceed and has not regained fitness within three months, it must consider whether the charges should be dismissed with prejudice or held in abeyance." State v. Moya, 329 N.J. Super. 499, 510 (App. Div. 2000). The decision to dismiss or hold in

14

abeyance is "in the sound discretion of the court" and thus subject to an abuse of discretion standard on review. State v. Gaffey, 92 N.J. 374, 389 (1983). "In determining whether charges against an incompetent defendant shall be held in abeyance or dismissed after the three month period following the initial determination of incompetency, the court is required to consider, not only factors relating to the defendant's competency," but the factors delineated in N.J.S.A. 2C:4-6(c). Moya, 329 N.J. Super. at 510.

N.J.S.A. 2C:4-6(c) provides, in part, as follows:

> There shall be a presumption that charges against a defendant who is not competent to proceed shall be held in abeyance. The presumption can be overcome only if the court determines, using the factors set forth in this subsection, that continuing the criminal prosecution under the particular circumstances of the case would constitute a constitutionally significant injury to the defendant attributable to undue delay in being brought to trial.
>
> In determining whether the charges shall be held in abeyance or dismissed, the court shall weigh the following factors: the defendant's prospects for regaining competency; the period of time during which the defendant has remained incompetent; the nature and extent of the defendant's institutionalization; the nature and gravity of the crimes charged; the effects of delay on the prosecution; the effects of delay on the defendant, including any likelihood of prejudice to the defendant in the trial arising out of the delay; and the public interest in prosecuting the charges.

"Plainly, a prime issue for judicial inquiry is whether such a defendant is so dangerous to himself or others as to require institutionalization or whether placement in an out-patient setting or release is appropriate. N.J.S.A. 2C:4-6(b)." Moya, 329 N.J. Super. at 511.

> [T]he current language of [N.J.S.A. 2C:4-6(c)] was intended to address legislative concern about cases in which charges against an incompetent are prematurely dismissed with prejudice. The statute leans toward holding a matter in abeyance, although always subject to correction for constitutionally significant injury arising from undue delay in bringing a defendant to trial.
> [Ibid.]

In Gaffey, our Supreme Court held the adequacy of the period of time during which the defendant remains unfit to be tried "is to be determined in terms of the real or likely prejudice to the rights of the defendant that can actually be shown or reasonably be inferred from the delay in bringing the matter to trial." 92 N.J. at 389. "In weighing the effects of delay on the defendant[] . . . , the judge should consider availability of witnesses, preservation of evidence, and the extent to which the delay may have resulted from causes attributable to the defense[.]" Moya, 329 N.J. Super. at 515.

The ultimate "determination should be made upon a balancing of the strength of evidence that defendant's prospects for regaining competency appear

hopeless," against the statutory factors, including the likelihood of prejudice to the defendant.  Gaffey, 92 N.J. at 389.

> When these factors coalesce to establish the untenability of continuing a criminal prosecution, the indictment should be dismissed with prejudice.  When this result is not demanded by the weighing of all relevant evidence, the indictment may be either dismissed without prejudice or held in abeyance in the sound discretion of the court.
>
> [Ibid.]

In Jackson, "a mentally defective deaf mute with a mental level of a pre-school child," was charged with two counts of robbery, found incompetent to stand trial under "Indiana['s statutory] procedures for determining . . . competency to stand trial," and "committed to the Indiana Department of Mental Health until such time as that Department should certify to the court that 'the defendant is sane.'"  406 U.S. at 717-19.  The defendant argued that his "commitment under these circumstances amounted to a 'life sentence' without his ever having been convicted of a crime," since "there was no evidence that [he] was 'insane,' or that he would ever attain a status which the court might regard as 'sane' in the sense of competency to stand trial."  Id. at 719.

The United States Supreme Court agreed and held that the commitment deprived the defendant "of his Fourteenth Amendment rights to due process and

equal protection." Ibid. In reversing, the Court concluded that Indiana could not "constitutionally commit the [defendant] for an indefinite period simply on account of his incompetency to stand trial on the charges filed against him." Id. at 720. The Court explained that

> a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.
>
> [Id. at 738.]

The Court noted that the defendant was "confined for three and one-half years on a record that sufficiently establishe[d] the lack of a substantial probability that he will ever be able to participate fully in a trial." Id. at 738-39. The Court remanded for consideration of whether fundamental fairness required that the charges against Jackson be dismissed, noting that "[a]t the least, due process requires that the nature and duration of commitment bear some

reasonable relation to the purpose for which the individual is committed." Id. at 738.[9]

Here, although defendant was not committed, the judge properly applied due process considerations in concluding that the presumption to hold the charges in abeyance was overcome. Contrary to the State's assertion, we discern no abuse of discretion in the judge's application of the N.J.S.A. 2C:4-6(c) factors, and determination that continuing the criminal prosecution under the unique circumstances of the case would constitute a constitutionally significant injury to defendant attributable to the undue delay in bringing him to trial.

"[J]udicial determinations should be informed by a comprehensive factual record that provides a basis for the N.J.S.A. 2C:4-4 determination and for a N.J.S.A. 2C:4-6 conclusion . . . ." Moya, 329 N.J. Super. at 506. The State argues that the unresolved issues in this matter rendered dismissal by the judge premature and inappropriate. However, based on the timeline established in the record, the judge's determination of incompetency to stand trial was first made

---

[9] Unlike Indiana's statute, N.J.S.A. 2C:4-6(b) provides that "no commitment to any institution shall be in excess of such period of time during which it can be determined whether it is substantially probable that the defendant could regain his competence within the foreseeable future."

on June 29, 2018, not April 22, 2019, as the State contends.[10] Because Chung's opinion regarding defendant's prospects for restoration of competency essentially remained unchanged from her first report dated June 1, 2018, to her testimony during the April 5, 2019 hearing, the State had ample time and opportunity to hire another expert to examine defendant or attempt to locate suitable treatment for defendant. Its dilatory effort in that regard was properly rejected by the judge as a basis to deny the application for dismissal with prejudice.

The State also argues that the judge lacked information needed to determine whether restoration to competency was possible given Chung's inconclusive opinion. However, informed by Chung's testimony and reports, the judge determined after her two-year-long experience with defendant that he was not substantially likely to attain competency in the near future, particularly

---

[10] According to the State, "[t]he June 29, 2018 determination was inconclusive and the case entered what was essentially an extended holding pattern based purely on logistical issues while the parties and court coordinated with Ann Klein for a follow-up evaluation." However, the State failed to provide the June 29, 2018 transcript, and Chung's June 1, 2018 report conclusively determined that defendant was "considered incompetent to stand trial at this time." Indeed, the only unresolved issue pertained to whether defendant could be restored to competency.

A-5632-18T1

given the unavailability of any type of outpatient restoration program to even attempt restoration.

It is the judge and not the expert who must make these ultimate determinations. See, e.g., In re D.C., 146 N.J. 31, 59 (1996) ("The final determination of dangerousness lies with the courts, not the expertise of psychiatrists and psychologists. . . . The ultimate decision on dangerousness is, therefore, a legal one, not a medical one, even though it is guided by medical expert testimony."); Moya, 329 N.J. Super. at 506 ("We recognize that it is the judge and not the experts who must make the ultimate determinations as to competency and as to the likelihood of danger to self or society."). "Our review of such determinations is typically, and properly, highly deferential." Ibid.

Notwithstanding the State's contrary arguments, we discern no abuse of discretion on the part of the judge to warrant our intervention. The record sufficiently established the lack of a substantial probability that defendant will ever be able to participate fully in a trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5632-18T1